[Civ. No. 32382. First Dist., Div. Four. June 29, 1973.]

ALFREDO RUSSI, Petitioner, v.
THE SUPERIOR COURT OF NAPA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Geoffrey B. Stearns for Petitioner.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, Robert R. Granucci and Herbert F. Wilkinson, Deputy Attorneys General, for Respondent and for Real Party in Interest.

**OPINION**

**BRAY, J.\***—Petition for writ of mandate to order the Napa County Superior Court to suppress certain evidence.

### Questions Presented

1. The entry and search of Miss Reed's premises were legal.

2. There was sufficient evidence of petitioner's knowledge, possession and control of the contraband.

Criminal complaints were filed in the Napa County Superior Court against petitioner and his codefendant, Linda Reed, charging them jointly with violating Health and Safety Code section 11500 (possession of heroin), section 11530 (possession of marijuana), and section 11555 (possession of narcotics paraphernalia). At the preliminary hearing both were held to answer.[1] Petitioner's motion to suppress evidence was denied after a hearing. Petitioner now seeks a writ of mandate to command the trial court to suppress evidence which he contends was illegally seized.

### Facts

Some time prior to September 10, 1972, Linda Reed had pleaded guilty to a charge of possession of marijuana and had been placed on probation. The pertinent terms of that probation agreement were "That [she] submit to search and seizure of [her] person and property at any time of the day or night by any law enforcement officer with or without a warrant . . ." The word "property" clearly covers her lease or rental of her apartment. Her right to the occupancy of the apartment is a property right.

Shortly before 11 on the evening of September 10 (a Sunday), officers (two in plain clothes and one in uniform) gathered at the residence of Linda Reed for the sole purpose of conducting a search of the premises pursuant to that condition. Although this information was not necessary to justify the search, they had received word from a Napa County deputy sheriff that he had been informed that Linda probably was using narcotics there. At this time one of the participating officers, Sergeant Harold Snook, was aware that the petitioner, Alfredo Russi, was living with Miss Reed.

Napa County District Attorney's Investigator Lee Chouinard knocked

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]Miss Reed has since pleaded guilty to lesser charges and is therefore no longer a party to this action.

on the front door. Petitioner opened the door. Chouinard asked, "Is Linda here?" Petitioner stepped back and motioned toward the interior of the room. Interpreting this gesture as consent to enter, Chouinard then walked into the living room where he saw a number of people. Among these were Linda Reed, who was sitting on the couch, Catherine Flanary, the petitioner's sister Monica Russi, and Andy Sorres.

Because Officer Chouinard was well acquainted with Miss Reed, he dispensed with the necessity of identification. However, he did inform Miss Reed of the purpose of their visit—to conduct a search pursuant to the terms of her probation. At this time petitioner asked one of the officers present if he had a search warrant. The officer thereupon, correctly, replied, "No, we don't need one." The search was then initiated.

Officer Chouinard proceeded to the back bedroom of the house along with Sergeant Snook. That bedroom had been identified by Miss Reed as her own. In this bedroom, as in the other bedroom, the officers saw a few garments which could be described as male clothing. They consisted of some trousers and shirts (ownership not identified). More importantly, the officers discovered a usable quantity of heroin in a jewel box which had been placed "in the top" of a dresser, and a hypodermic kit which was contained in a leather pouch lying on the floor in a corner of the bedroom near its entrance. Amounts of marijuana were also found in a stationery box inside a drawer in the living room. Some papers, including a pawn ticket bearing petitioner's name, were also discovered in a desk in that room.

After proper admonition, Miss Reed admitted ownership of the marijuana, but denied knowledge of the heroin. Petitioner made no statement at this time, but subsequently stated that he stayed at the house on weekends. Thereupon, petitioner and Linda Reed were arrested for the illegal possession of heroin, marijuana and narcotics paraphernalia.

### 1. *Entry and search were legal.*

Petitioner contends that as to him the officers' entry and search of Miss Reed's premises becomes an unlawful violation of his Fourth Amendment rights because he did not give his consent thereto or waive his rights. The contention rests mainly upon the proposition that one co-tenant "may not authorize police officers to enter and search the [jointly occupied] premises over the objection of another joint occupant. . . ." (*Tompkins* v. *Superior Court* (1963) 59 Cal.2d 65, 69 [27 Cal.Rptr. 889, 378 P.2d 113].) In effect, he contends that his right of privacy is an absolute and cannot be limited in any degree by the terms of probation as-

sented to by his cotenant, that his consent to the search or an express waiver of his constitutional right is essential to the validity of the police entry and search and that any contraband discovered therein that may implicate him in crime may not be used at his trial. ■ We do not agree with his contentions for the following reasons:

When a convicted defendant in order to obtain probation specifically agrees to permit a warrantless search at any time of his person or property, he waives whatever claim of privacy he might otherwise have had and a search of his residence by police officers pursuant to such agreement is reasonable and proper. (*People* v. *Mason* (1971) 5 Cal.3d 759, 766 [97 Cal.Rptr. 302, 488 P.2d 630].) ■ There can be no question but that the officers, by reason of Miss Reed's stipulation, with or without the report that Miss Reed was probably using narcotics there, could search her premises without a warrant and without proving probable cause.[2] No question of subterfuge, coercion or harassment is present in the record before us. Nor were the officers required to announce that they were police officers when the door was opened by petitioner. They asked for Miss Reed and petitioner opened the door further and indicated that she was inside on a couch. At least one of the officers was personally known to Miss Reed as an officer, so it was unnecessary that he identify himself as such. However, he did announce the purpose of his visit. As we have noted above, it was at this point that petitioner inquired whether they had a search warrant. By reason of Miss Reed's agreement, the answer was a correct one and the officers had a right to be there. As stated in *People* v. *De Santiago* (1969) 71 Cal.2d 18, 29 [76 Cal.Rptr. 809, 453 P.2d 353], whether or not an unannounced police entry is justified depends upon the attendant circumstances. Nothing in the record before us makes the entry and search unjustifiable except the mere presence of petitioner.

Petitioner cites no authority holding that where, as here, officers have the right to enter and search a probationer's residence, they must first announce that they are police officers and must reinforce the probationer's preexisting consent with a renewal thereof and secure the additional consent of the nonprobationer cotenant as well. Because most of the cases dealing with entries grounded upon the consent of one joint occupant

[2]The legislative enactment in 1972 (Stats. 1972, ch. 796, § 1, subd. (c)) which relieved marijuana misdemeanants from the requirement of registering with the police or sheriff does not affect the validity of the probationer search provision. The legislative enactment in no way changes Miss Reed's generic status as a narcotics offender, in the sense in which *People* v. *Mason, supra,* uses that term in defining the relationship between the generic nature of the prior offense and the probation condition.

involve a factual situation wherein the consenting occupant is absent from the premises at the time consent is given and the other, present on the premises, refuses entry (e.g., *Tompkins* v. *Superior Court, supra,* 59 Cal. 2d 65), while others turn upon the question of the actual or apparent authority of the person giving consent (e.g., *People* v. *Gorg* (1955) 45 Cal.2d 776 [291 P.2d 469]), we are unable to find direct authority for the proposition that where both cotenants are present and valid consent of one of them exists nothing further is required. Witkin's California Evidence (2d ed. 1966) at page 82, notes the existence of a "superficial conflict" between the two lines of cases and its attempted resolution by *People* v. *Smith* (1966) 63 Cal.2d 779, 799 [48 Cal.Rptr. 382, 409 P.2d 222]. But we see no reason why the probationer's consent must be treated as though it was that of an absent cotenant and deemed limited and partially invalidated by the existence and presence of a nonconsenting cotenant.

If the record showed that any of the containers searched belonged solely to the petitioner and not to Miss Reed or they disclosed some indication of that possibility and the officers should have been on notice that they were intruding into the property of some third person, there might then be a question of their good faith in opening them, were it not for the fact that some narcotics and paraphernalia were in plain sight and furnished probable cause for search even as to the third person. Similarly, if the record disclosed any inference that the purpose of the officers' intervention was to secure evidence that would implicate petitioner in crime, the posture of the search would be different and the antecedent probationer cotenant's consent might not then operate "to allow the opening of *her* personal receptacles somehow to produce evidence against" him, as is said in the dissenting opinion. But these factors are not present in the record.

Petitioner's contention that as to him (a probationer's cotenant) contraband that is discovered during an otherwise lawful search of jointly occupied premises must be excluded absent evidence of his express consent or proof of knowledge on his part of the terms of probation (an element that would be virtually impossible to prove) ignores the rationale of the exclusionary rules developed in this area of constitutional law, namely, that it is beneath the dignity of a court of law to receive in evidence that which is secured by lawless police activity and thus abet "lawless enforcement of the law" (*People* v. *Cahan* (1955) 44 Cal.2d 434, 449 [282 P.2d 905, 50 A.L.R.2d 513]). Where coercion, subterfuge or other lawlessness on the part of a police agency is not involved, the dignity of the law is not compromised. The legerdemain involved in the transformation of a single search and property into two disparate searches and prop-

erties requires a dexterity that we are unwilling to exert where no illegality or unreasonableness of police action appears. In our opinion, if the entry and search was reasonable and lawful as to the probationer cotenant, petitioner's consent is irrelevant and *he is in no position* to claim that the officers did not have the right to search the premises and seize any contraband discovered in the process.

■ It is well established that the right of privacy guaranteed by the Fourth Amendment is not an absolute and may be abridged where a compelling public interest so requires. In *People* v. *Triche* (1957) 148 Cal. App.2d 198, at page 203 [306 P.2d 616], such interest was acknowledged in the following language: "We need not decide in general how far the right of a parole officer extends to search premises which are not under the exclusive control of his parolee or to which the relation of his parolee is not known with certainty. . . . Here, the defendants, although not married, actually lived together in the apartment which they had rented as if they were a married couple. We have no doubt that the fact that a parolee is married and is living with his wife will not prevent the parole officer from searching his premises without a warrant when there is reasonable cause to believe that he has violated his parole; the wife will be in no position to complain of violation of her right of privacy, which because of her living with a parolee subject to special rules of supervision, *must be to some extent restricted in the public interest.* We see no reason why the same should not apply to the woman who lives with a parolee as if they were a married couple, without such actually being the case." (Italics added.) Parole and probation are equally important aspects of the state's penal system and optimum successful functioning thereof is of compelling public interest. There is no practical difference between a parolee and a probationer that affects the issues of the present case.

■ The consent provision common to many orders granting probation is recognized as a salutary and appropriate condition in cases involving narcotics offenders. (*People* v. *Mason, supra,* 5 Cal.3d 759, 764.) It furnishes motivation for a probationer to avoid further narcotics involvement. As we said above, a matter of compelling public interest is involved. If, for argument, it is conceded that a third person's right of privacy may be diminished, such diminution (a deprivation of the right of a probationer's spouse, paramour or other cotenant to refuse police entry and search of the common property) is but incidental to the public interest served. We are not impressed by petitioner's argument that such deprivation will cause a probationer's friends and family to shun association with a probationer because it may entail "forfeiture" of Fourth Amendment rights. There is simply no reason for a friend or family member to fear the con-

sequences of a search or shun the probationer if he is not engaged in criminal activity. If he is so engaged, a probationer's residence should not be made sanctuary for his contraband. There would be a gross moral and legal incongruity in a requirement that police blind themselves to evidence discovered in a lawful search that may implicate a third person while the use of the same or other evidence is permitted against a probationer who faces both a new prosecution and revocation of probation. The third person, if abetting the probationer in a renewal of criminal activity that destroys the purposes of probation, does not deserve such favored status. If the law demands such a bizarre and unfair result there would be little hope of fostering or restoring an attitude of respect for law on the part of a probationer thus victimized. Such attitude is deemed essential to the rehabilitative process that is a primary objective of our system of probation and parole.

In *People* v. *Kanos* (1971) 14 Cal.App.3d 642 [92 Cal.Rptr. 614], the court, quoting *Triche, supra,* rejected defendant parolee's contention that evidence procured in a warrantless search of the residence, occupied by him and his wife, justified solely by a suspected parole violation had to be excluded because (although he was present and could not object) the entry constituted a violation of his wife's right to privacy. The court said (p. 651): "Here, there was a lawful search of defendant's residence. To hold that defendant could assert that his wife's constitutional rights had been violated would be to hold that defendant can immunize his residence from the parole officer's scrutiny by living with someone else, and thus emasculate one significant feature of the parole system." In *Kanos,* the defendant relied on the vicarious exclusionary rule that a criminal defendant has standing to object to the introduction of evidence illegally seized from a third person (*People* v. *Martin* (1955) 45 Cal.2d 755, 760-761 [290 P.2d 855]; see also *Kaplan* v. *Superior Court* (1971) 6 Cal.3d 150 [98 Cal.Rptr. 649, 491 P.2d 1], where a sharply divided court held that the enactment of Evidence Code section 351 did not affect the rule). If there is any merit to the argument that *Triche* merely holds that a parolee or probationer lacks standing to assert the unconstitutionality of the search as to a third party and that the court's discussion of the *status* of the third party is therefore dicta, the *Kanos* adoption of the *Triche* language as dispositive of the issue raised by *Kanos'* reliance on the vicarious exclusionary rule removes the passage from the category of dicta. What was said in *Triche* and *Kanos* with reference to the status of the third parties involved therein applies equally to petitioner even though he is a defendant. Although petitioner told the officers that he was a weekend visitor, in his sworn petition herein he states that the residence was "shared by petitioner and Linda Reed," that he lived with her and they were co-

tenants. His status was not that of the "transient guest" considered in *People* v. *Cruz* (1964) 61 Cal.2d 861 (p. 866) [40 Cal.Rptr. 841, 395 P.2d 889] whose suitcase could not be inspected without her consent. We accordingly hold that petitioner's consent to the entry and search is irrelevant to the issue of its lawfulness.

Whether or not petitioner knew of the probationary condition is also irrelevant because just as his cotenant could not limit his right to possess and enjoy (or relinquish) the whole or any part of the common property (cf. *Tompkins* v. *Superior Court, supra,* 59 Cal.2d 65, 69) he cannot limit her coexistent and coequal rights. If the cotenancy had existed at the time she gave her consent, he could not have prevented her action by the claim that his civil rights might be affected thereby. If he subsequently assumed his relationship with the probationer, his newly acquired status did not create a right for him to limit the effect of the consent already given. If the entry was valid as to Miss Reed, his lack of knowledge of the existence of the limitation of privacy that attached to the common residence, does not serve to create an abuse of police power and transform lawful police activity to the unreasonable and lawless activity that effectuates the constitutionally compelled rules of exclusion. (Cf. *People* v. *Fry* (1969) 271 Cal.App.2d 350, 356-357 [76 Cal.Rptr. 718].)[3] His plight is not occasioned by coercive or other lawless police activity but by the presence of contraband in a place that lacked a normal expectation of privacy.

---

[3]*People* v. *Fry, supra,* 271 Cal.App.2d 350 at page 356, holds that evidence observed by the police when, with the consent of his wife, they entered the home of a defendant who was then in custody was admissible although the wife, before the police left, refused permission to search and told the police that her husband had told her not to permit anyone to enter or to search the house. The evidence had been observed before this assertion by the wife. Because of defendant's refusal to reveal his home address to the police and the knowledge imparted to them that he had instructed his wife to refuse permission to enter and search, evidence seized upon a second entry, again with the wife's permission, was held inadmissible because the police "under these circumstances, were not entitled to rely upon her consent as justification for their conduct." Their conduct was characterized as the kind of " 'unreasonable activity on the part of law enforcement officers' which the exclusionary rule intends to discourage." The decision notes that what was observed upon their first entry could have supported a search warrant that would have obviated any constitutional question as to the later seizure (p. 357). But in the case before us, there can be no question of the good faith of the officers in their reliance on the probationer cotenant's prior consent. Their entry was not a subterfuge to secure evidence against petitioner. Petitioner's inquiry, after admitting the officers, as to whether the officers had a search warrant, does not appear to us to be an assertion of petitioner's right to independently object if, indeed, he had such right. Further, if the search was legal, to require the officers after seizure to then procure a search warrant for premises already validly searched insofar as they might be considered "His" rather than "Hers" and thus revalidate a valid search in order to "purify" evidence already seized verges upon incantation and ritual, if not parody.

His ignorance of such lack is irrelevant to the issue of the propriety of the search. Accordingly, we find no merit in petitioner's contention that the evidence was procured as the result of an illegal search and seizure.

## 2 *Probable cause.*

There is no merit to petitioner's contention that the evidence was obtained as the result of an illegal search and seizure. The evidence was properly admitted in evidence. ■■■ The question as it relates to petitioner is whether the evidence shows probable cause that petitioner violated the law.

In considering the evidence to determine whether petitioner was properly held to answer (and his motion to suppress evidence properly denied) it is necessary to bear in mind the rule by which that evidence is tested.

■■■ " 'The evidence . . . is not subject to the same test as that before a trial jury in a criminal action, and reasonable or probable cause may be found for holding to answer although the evidence does not establish the defendant's guilt beyond a reasonable doubt. All that is required is a reasonable probability of the defendant's guilt.' " (*People* v. *White* (1961) 195 Cal.App.2d 389, 390-391 [15 Cal.Rptr. 665].)

■■■ On a motion to set aside an information, the question of the guilt or innocence of the defendant is not before the court, nor does the issue concern the quantum of evidence necessary to sustain a judgment of conviction. The court is only to determine whether the magistrate, acting as a man of ordinary caution or prudence, could conscientiously entertain a reasonable suspicion that a public offense has been committed in which defendant had participated. (*Weber* v. *Superior Court* (1950) 35 Cal.2d 68, 69 [216 P.2d 871].)

■■■ "Constructive possession is sufficient and possession by any person when the defendant has an immediate right to exercise dominion and control over the narcotic will support a conviction." (*People* v. *Roberts* (1964) 228 Cal.App.2d 722, 727 [39 Cal.Rptr. 843].)

■■■ "[I]n a prosecution for unlawful possession of narcotics, the People must prove that the accused exercised dominion and control over the drug with knowledge both of its presence and of its narcotic character. [Citations.] These elements may be established by circumstantial evidence . . . . Exclusive possession of the premises is not required, nor is physical possession of the drug." (*People* v. *Roberts, supra,* at pp. 726-727.)
■■■ "Though proof of opportunity of access to a place where narcotics are found, without more, will not support a finding of unlawful posses-

sion," possession may be imputed where the contraband is found in a location which is subject to joint dominion and control of the accused and another. (*Id*. at p. 726.)

"[T]he necessary elements (that the accused exercised dominion and control over the drug with knowledge of both its presence and its narcotic character) may be established by circumstantial evidence and any reasonable inferences drawn from such evidence; and neither exclusive possession of the premises nor physical possession of the drug is required. [Citations.]" (*People* v. *Harrington* (1970) 2 Cal.3d 991, 998 [88 Cal. Rptr. 161, 471 P.2d 961].)

Having in mind that we are not determining whether the evidence against petitioner was strong enough to convict him at a trial but merely whether it is sufficient to raise reasonable inferences of the required elements, we find such evidence here. In the first place, petitioner and the probationer are living together. A most reasonable inference, pertinent to the issue of probable cause, arises therefrom that he knew that she was a probationer and a narcotic user. In fact it would probably be unreasonable to infer that he did not know these matters. Male clothes (trousers and shirts) were found in Miss Reed's bedroom. In view of the relationship between her and petitioner a most reasonable inference is that the clothes were his. That he knew of the presence of the contraband is also a reasonable inference not only because of the relationship, but because a hypodermic kit was lying on the floor near the entrance to the bedroom which it is reasonable to assume one living there could hardly avoid seeing. Additionally, a quantity of marijuana was found in a drawer in a desk in the living room and a pawn ticket and papers with petitioner's name on them were found in a desk in the living room. On top of this desk there was an "alligator clip." Inside a vase on top of the TV table was a yellow metal roach clip, also in the living room a red roach holder on top of the coffee table. On the shelf divider between the kitchen and the dining room there was another roach clip with a leather thong attached to it and one hanging from a tapestry in the living room. At least two of these clips contained traces of marijuana residue. With all these roach clips in the open, can it be said that petitioner did not see them and know of the presence of narcotics? A person could not live long with a marijuana user without knowing of the use and possession of the drug. There is an important public interest served in not requiring a police officer to overlook what he sees and finds in a consent search and to ignore any reasonable inferences that arise.

In *People* v. *Haynes* (1967) 253 Cal.App.2d 1060 at page 1064 [61

Cal.Rptr. 859], the court states: "Factors supporting an inference of joint and constructive possession are joint occupancy of premises where the narcotic is located. . . ." In that case the evidence indicated that the two defendants were living together in the premises where narcotics were found. The male defendant's shoes and suit were found in a closet adjoining the bedroom. While there was other evidence to tie the male defendant to the possession of the narcotics, the fact of the defendants living together and the presence of the man's clothes were held to be important in considering the inference of his knowledge of the narcotics found there reasonably deducible from the circumstances. In any event he could be held for possession of narcotics paraphernalia (the roach clips).

The petition is denied; the alternative writ of mandate is discharged.

Good, J.,* concurred.

**DEVINE, P. J.**—I dissent.

I am of the opinion that the consent given by Linda Reed did not operate as a consent by petitioner and therefore that the seized contraband cannot be used against him. One joint occupant of a residence who is present may under certain circumstances grant consent to search, which will be effective even to justify the seizure of the property of the other occupant who is absent. Thus, in *People* v. *Carter,* 48 Cal.2d 737, 746 [312 P.2d 665], it was held that when the usual amicable relations exist between husband and wife, and the property seized is of a kind over which the wife normally exercises as much control as does the husband, the absent husband may be deemed to have given tacit consent to the wife to allow the search. But consent by an absent joint occupant is ineffective against a nonconsenting person who is present when the officers declare themselves. (*Tompkins* v. *Superior Court,* 59 Cal.2d 65 [27 Cal.Rptr. 889, 378 P.2d 113].) The Reed consent ought to be regarded as one made by an absent person, or at least to be regarded as analogous to such a consent. For although Miss Reed was present at the premises when the search was made, she did not then give or renew consent; the officers did not ask for it, but made it plain that they were operating on the consent attached to probation.

Moreover, the consent was essentially a personal and limited one. It was personal because it included the right to search even the probationer's person—obviously this would not carry over to the person of anyone else.

*Retired judge of the superior court sitting under appointment by the Chairman of the Judicial Council.

It was personal, too, in that it was something bargained for by the prospective probationer, who alone received a quid pro quo.[1] It was limited in time, and a cotenant would not necessarily know that limit if, indeed, he knew of the probation at all. (I must disagree with the statement that a most reasonable inference is that Russi knew that Miss Reed was a probationer. In fact, she might well have desired that he *not* know of the probation. It is pure guesswork.) The consent was limited in place, to Napa County; true, the search took place there, but the point is that the consent was one drawn to suit the court which granted the probation, and not of the character of a fresh, unforced permission to make an immediate search of a particular place.

But I would not hold that *Tompkins* v. *Superior Court, supra,* forbids the search altogether. In deference to the necessities of the enforcement of probation and of the decision of *People* v. *Mason,* 5 Cal.3d 759 [97 Cal.Rptr. 302, 488 P.2d 630], I would hold that the search was valid insofar as it produced evidence against Miss Reed. I would hold, if Linda Reed were seeking relief, that her antecedent consent deprived her of standing to protest search. But diminution of Fourth Amendment protection is justified only to the extent necessitated by the legitimate demands of the parole (or probationary) process (*In re Martinez,* 1 Cal.3d 641, 649 [83 Cal.Rptr. 382, 463 P.2d 734]). The demand, so far as it is legitimate, has been met. Linda Reed gave consent to search; the search was made; the contraband was produced against her, and she pleaded guilty.

But a joint occupant's right of privacy in his home is not completely at the mercy of another with whom he shares legal possession. (*Tompkins* v. *Superior Court, supra,* 59 Cal.2d at p. 69.) It is to be noted, also, that the contraband was found in containers—a jewelry box, a leather pouch and a stationery box—nowhere else. The officers made no attempt to ascertain, even by simple questioning, whether these were Miss Reed's, a procedure which would be indicated by *People* v. *Cruz,* 61 Cal.2d 861 [40 Cal.Rptr. 841, 395 P.2d 889], and *Beach* v. *Superior Court,* 11 Cal. App.3d 1032, 1035-1036 [90 Cal.Rptr. 200]. If any, or all of them were *Russi's* property, Miss Reed's consent would be of no avail. (*People* v. *Cruz, supra,* at p. 867; *People* v. *Terry,* 2 Cal.3d 362 [85 Cal.Rptr. 409, 466 P.2d 961]; *People* v. *Egan,* 250 Cal.App.2d 433, 436 [58 Cal.Rptr. 627]; *People* v. *Murillo,* 241 Cal.App.2d 173 [50 Cal.Rptr. 290]; *Beach* v. *Superior Court, supra.*) Therefore, to sustain the prosecution's theory

---

[1]Even as to the acceding parolee or probationer the advance consent is given rather critical examination. (*In re Martinez,* 1 Cal.3d 641, 647 [83 Cal.Rptr. 382, 463 P.2d 734].)

of the case, it must be shown that the containers were Miss Reed's, in order to use the contents against Russi as a person having joint control of those contents. There was no such showing. This is not a case in which the house must be divided theoretically into two dwellings, one for Russi and one for Miss Reed. It is one in which there was a warrantless search of *property* (the containers)—that was the only productive search, at least —the ownership of which was not established. But if it be thought that the jewelry box and, perhaps, the stationery box, were more likely Miss Reed's than Russi's, the antecedent consent given by her should not operate to allow the opening of *her* personal receptacles somehow to produce evidence against petitioner.

The cases of *People* v. *Kanos,* 14 Cal.App.3d 642 [92 Cal.Rptr. 614], and *People* v. *Triche,* 148 Cal.App.2d 198 [306 P.2d 616], present the exact opposite to the situation in the instant case. In each, the *parolee* attempted to take advantage of the rights of the *nonparolee.* Obviously, if a parolee (or probationer) could do this, he could avoid the condition of parole simply by living with someone not on parole. Neither in *Kanos* nor in *Triche* were the rights of the nonparolee before the court. There were statements in each that the nonparolee's right to *privacy* was not infringed by the search—not that the nonparolee could not legitimately protest *seizure* of property to be used in a charge against him, and in neither was there question of the contents of a container.

I take note of the declaration in the majority opinion about the rationale of the exclusionary rule as stated in *People* v. *Cahan,* 44 Cal.2d 434, 449 [282 P.2d 905, 50 A.L.R.2d 513]. But the lawless conduct referred to throughout the search and seizure cases is not necessarily conduct characterized by bad faith, trickery, subterfuge, or peremptory assertion of unwarranted authority. Thus, although officers may be acting in all good faith under decisions which state the law at the time of their actions, the searches may be invalid by reason of later decisions of the courts, e.g., *People* v. *Superior Court (Simon)* 7 Cal.3d 186 [101 Cal.Rptr. 837, 496 P.2d 1205]. The lawlessness in such cases is not of the kind which makes the officer a malefactor. In the case before us, I believe the search was unlawful as to Russi, even though the officers did act in accordance with the law in acting on Miss Reed's consent so far as her property was concerned.

The conclusion reached by the majority would produce this result: The consent given by one guilty party, pleading for the leniency of the court in the form of probation, would make subject to search without warrant the living quarters of all persons (for a probationer may make her home

with a number of other persons) who are within the same domicile. Thus, the consent of one given in court perhaps months or even years before the search would be multiplied in effect to become consent of many.

I would issue the writ.

Petitioner's application for a hearing by the Supreme Court was denied August 22, 1973. Tobriner, J., Mosk, J., and Sullivan, J., were of the opinion that the application should be granted.