Opinion
 

 JEFFERSON (Bernard), J.
 

 By an amended information, defendant was charged in count I with having committed, on March 23, 1976, a violation of section 11351, subdivision (a), of the Health and Safety Code by having in her possession for purpose of sale a controlled substance, to wit, heroin. It was also alleged in count I that defendant possessed for sale one-half ounce or more of heroin within the meaning of Penal Code section 1203.07. In count II defendant was charged with having committed a violation of section 11350 of the Health and Safety Code on
 
 *580
 
 March 23, 1976, by having in her possession a controlled substance, to wit, heroin. The amended information also charged defendant with one prior felony conviction.
 

 Defendant initially entered a plea of not guilty and denied the allegation with respect to the prior felony conviction. Thereafter, defendant made a motion to dismiss the information pursuant to Penal Code section 995. This motion was denied. Defendant also made a pretrial motion under Penal Code section 1538.5 to suppress all evidence—material objects and writings—secured by the police on the ground that such evidence was a product of an unlawful search and seizure of defendant’s residence. The motion to suppress was also directed to heroin taken from defendant’s person following her arrest after a search of defendant’s apartment turned up other contraband items. In connection with the section 1538.5 motion, defendant stipulated with the prosecution that the motion was to be determined on the basis of the testimony contained in the transcript of defendant’s preliminary hearing and on the basis of the exhibits introduced in evidence at the preliminary hearing. Defendant’s suppression-of-evidence motion was denied.
 

 Thereafter, defendant entered a plea of guilty to count I of the information. Probation was denied and defendant was sentenced to prison for the term prescribed by law. On motion of the People, the allegation with respect to the “one-half ounce or more of heroin,” alleged as a part of count I of the information, was ordered stricken. Count II of the information was dismissed in the interests of justice and the court made no finding with respect to the allegation of the prior felony conviction, no proof of the prior having been offered by the People.
 

 Defendant appeals from the judgment of conviction. The appeal is appropriate since the basis of the appeal is directed to the trial court’s denial of the motion to suppress evidence resulting from a claimed unlawful search and seizure. (Pen. Code, § 1538.5, subd. (m).)
 
 [1]
 

 Evidence at the preliminary hearing consisted of the testimony of nine police officers, together with six items of material objects and writings admitted into evidence as exhibits. Donald Goldberg, a police officer for
 
 *581
 
 the City of Burbank, testified that on March 19, 1976, he received information from a confidential informant that David Vanderdecker was living in North Hollywood with defendant, his girl friend, and that David was dealing in heroin. The informant gave Officer Goldberg a phone number for David. A check with the telephone company revealed that the telephone number was an unlisted number assigned to defendant at the address of 5142 Denny, apartment 4, in north Hollywood. Approximately two days later, Officer Goldberg contacted the Department of Corrections and received information that David was on probation with a consent-to-search provision constituting one of the conditions of his parole. The parole condition provided as follows: “Search: You shall submit to a search of your person, your residence, any any property under your control upon request by your agent, any agent of the Department of Corrections, or
 
 law enforcement
 
 officer.” (Italics added.)
 

 On the dates of March 22 and 23, 1976, other police officers received similar information to the effect that David was dealing in heroin at the same address which the informant gave Officer Goldberg. Some of the officers who testified at the preliminary hearing stated that they had also been given information that defendant and David both lived at the Denny Street address and that both were involved in the sale of heroin.
 

 On March 23, 1976, officers from the Burbank Police Department and the Los Angeles Police Department began an investigation of defendant and David. Several officers proceeded to keep defendant and David under surveillance while others began a surveillance of the premises at 5142 Denny Avenue. All of this surveillance began at approximately 3 p.m. of the afternoon of March 23, 1976. Defendant and David were seen driving a Volkswagen automobile. They were observed to drive to various locations, park, get out of their automobile and have conversations, varying in length, with drivers and occupants of other vehicles. On the basis of these observations, the officers formed an opinion that David had been involved in making sales of heroin to the various people whom David and defendant had met throughout the day.
 

 At about 7:40 p.m., on March 23, 1976, the Volkswagen that had been observed since 3 p.m., drove to a parking lot adjacent to 5142 Denny Avenue and stopped. At this time defendant was the driver of the Volkswagen. Several police officers approached the vehicle, indicated to David and defendant that they were police officers, although they were dressed in casual attire and not in uniform. In answer to a question as to where he lived, David indicated the address, 5142 Denny, apartment 4.
 
 *582
 
 The officers advised David that they were going to make a search of the apartment pursuant to the terms of David’s parole. David stated to the officers that he believed only his parole agent was authorized to make a search under the consent provisions of his parole. An officer removed the keys from the ignition of the Volkswagen and asked David which of several keys opened the apartment door. David pointed to a particular key and the officers, together with David and defendant, proceeded to apartment 4. There, David used the key he had identified to open the door to the apartment and approximately seven or eight officers, all in civilian and casual attire, entered the apartment along with David and defendant.
 

 While the group was proceeding from the Volkswagen vehicle to apartment 4, defendant stated to one of the officers that she didn’t know why they were there or why they were concerned with David because David didn’t really live at the apartment and that it was her apartment.
 

 After arriving in the apartment, one of the officers directed the defendant into the bedroom, which was the only bedroom to the apartment. One of the officers asked defendant if she would consent to a search of the apartment, indicating that the officers were there to conduct a narcotic investigation. Defendant’s response to the request for consent to conduct a search was in the following words: “Go ahead and search. There’s nothing here.”
 

 A searching officer removed from a bureau drawer in the bedroom a man’s wallet which contained David’s social security card. In another drawer the officer removed two balloons which turned out to contain heroin. The two balloons were in a drawer in which the only other items were women’s underclothing. Other drawers contained men’s underclothes. A bedroom closet contained both male and female clothing. In other areas of the apartment were found narcotic paraphernalia, such as funnels and syringes. A bag of lactose used to cut heroin was removed from the trunk of the Volkswagen. After these articles were found in the apartment defendant and David were placed under arrest and transported to the Burbank police station.
 

 At the Burbank police station a female officer was called to help escort defendant from the parking lot area to the booking area. As defendant and two officers walked toward the booking area, the officers noticed defendant reaching several times toward her back in the area of the waistband to the blue jeans she was wearing. After reaching the booking
 
 *583
 
 area the female officer reached into the back of defendant’s blue jeans and removed a baggie. The baggie contained 26 balloons with powder which, upon subsequent examination, turned out to be heroin.
 

 Defendant’s attack upon the validity of the search of the apartment on Denny Avenue is predicated on the contention that the apartment was defendant’s apartment—not David’s apartment—and that the police officers made entry into her apartment without her consent and without having a search warrant or any reasonable cause to believe that she had committed any violation of law. Defendant contends that the initial entry being illegal, her subsequent consent to the search of her apartment was not a free and voluntary consent.
 

 Defendant thus argues that the contraband taken from the apartment and from defendant’s person after her arrest are inadmissible pursuant to the “fruit of the poisonous tree” doctrine set forth in
 
 Wong Sun
 
 v.
 
 United States
 
 (1963) 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407], The People justify the search of the apartment and seizure of contraband found therein on the theory that the police officers were entitled to enter the apartment by virtue of David’s prior consent based upon the conditions of his parole, and that the arrest of defendant and David was justified after a search of the premises had revealed the heroin found in a dresser drawer in the bedroom of the apartment.
 

 Defendant argues that the evidence established that the apartment belonged to defendant since the utilities were in defendant’s name, the phone was in defendant’s name, and that defendant paid the rent on the apartment. Defendant also emphasizes that she informed the officers prior to their entry that it was her apartment, not David’s, and that David did not actually live there.
 

 We turn first to the question of whether the parole condition of an advance consent to search, imposed upon David, gave the police officers a valid permission to enter the apartment. It has become established law that a probationer or parolee may validly be required to give a consent to probation and parole officers to search his property and his person as a condition of accepting probation or parole. “It seems beyond dispute that a condition of probation which requires a prior narcotics offender to submit to a search meets the test set forth in
 
 Bushman,
 
 since that condition is reasonably related to the probationer’s prior criminal conduct and is aimed at deterring or discovering subsequent criminal offenses. Indeed, the cases have held that such a
 
 *584
 
 condition is reasonable and valid, being ‘related to [the probationer’s] reformation and rehabilitation in the light of the offense of which he was convicted.’ [Citations.]”
 
 (People
 
 v.
 
 Mason
 
 (1971) 5 Cal.3d 759, 764 [97 Cal.Rptr. 302, 488 P.2d 630].) (Fn. omitted.)
 
 [2]
 

 The principle set forth in
 
 Mason
 
 with respect to probationers is equally applicable to parolees. Parolees, as well as probationers, although entitled to Fourth and Fifth Amendment constitutional rights, are not entitled to the full panoply of rights possessed by the average citizen.
 

 Although there does not appear to be a direct holding that it is a reasonable condition of parole that the parolee be required to give his consent to a search—not only to a parole agent, but to any law enforcement officer—such a required consent would not appear to constitute a violation of a parolee’s constitutional protection against unreasonable searches and seizures, provided, however, the police officers have reasonable grounds for believing that the parolee is engaged in criminal activity. This view would seem compelled by what the California Supreme Court said in the case of
 
 In re Martinez
 
 (1970) 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734],
 

 The
 
 Martinez
 
 court stated: ‘"Searches by parole officers pursuant to their duties, just as other administrative searches [citation] are subject to the broad reasonableness requirement of the Fourth Amendment. [Citations.] The conditional nature of a parolee’s freedom may result in some diminution of his reasonable expectation of privacy and thus may render some intrusions
 
 by parole officers
 
 ‘reasonable’
 
 even when the information relied on by the parole officers does not reach the traditional level of ‘probable cause.
 
 ’ A diminution of Fourth Amendment protection, however, can be justified only to the extent actually necessitated by the legitimate demands of the operation of the parole process. [Citations.] When a
 
 police officer
 
 is not aware that a suspect is on parole, or is not investigating a parole violation, an intrusion into the parolee’s privacy cannot be properly justified by the needs of the parole system.”
 
 (In re Martinez, supra,
 
 1 Cal.3d 641, at p. 647; fn. 6.) (Italics added.)
 

 In addition, it was stated in
 
 Mason
 
 that “[defendant contends that a probation condition which requires submission to a warrantless search constitutes an unreasonable invasion of his Fourth Amendment rights.
 
 *585
 
 We have heretofore suggested, however, that persons conditionally released to society,
 
 such as parolees,
 
 may have a reduced expectation of privacy, thereby rendering certain intrusions by
 
 governmental authorities
 
 ‘reasonable’ which otherwise would be invalid under traditional constitutional concepts, at least to the extent that such intrusions are necessitated by legitimate governmental demands. [Citations.]”
 
 (Mason, supra,
 
 5 Cal.3d 759, at pp. 764-765.) (Italics added.)
 

 In the case at bench, several of the police officers had information, not only that David was on parole, but that he had consented to a search by law enforcement officers as well as by a parole agent. In view of the information which the police officers had received from informants and in view of the information obtained from their surveillance of David and defendant during the period from 3 p.m. to 7:40 p.m. on March 23, 1976, we hold that any search of premises
 
 occupied by David
 
 would be a reasonable application of the consent-to-search-by-a-law-enforcement-officer set forth as a condition of David’s parole.
 

 We reject defendant’s contention that the evidence was insufficient to establish that the premises located at 5142 Denny, apartment 4, was the residence of David when the police relied upon his prior consent to search to justify police entry into apartment 4. The trial judge was entitled to make a finding that apartment 4 was the residence of David as well as the residence of defendant by accepting the testimony of the police officers that David stated that this was his residence and indicated the same by identifying the key to the apartment that was on the key ring taken from the ignition of the Volkswagen. The trial court was not required to accept as credible the defendant’s statement that the apartment was hers, not David’s, and that David did not live there.
 

 “A proceeding under [Pen. Code] section 1538.5 to suppress evidence is a full hearing on the issues before the superior court sitting as finder of fact. [Citations.] The power to judge credibility of witnesses, resolve conflicts in testimony, weigh evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor proper exercise of that power, and the trial court’s findings—whether express or implied—must be upheld if supported by substantial evidence.” (Pe
 
 ople
 
 v.
 
 Superior Court (Keithley)
 
 (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585].)
 

 
 *586
 
 Defendant, however, makes the additional contention that the consent of David for the police officers to make a search of
 
 his
 
 residence was not sufficient to give the officers the right to search portions of the premises in the exclusive occupancy of defendant. This argument of defendant would have merit if the trial court had reached a conclusion from the evidence presented that the portion of the bedroom where the two balloons were found constituted an area under the sole dominion and control of defendant. In the instant case the evidence is sufficient to establish that all portions of the one-bedroom apartment were in the possession of David and the defendant as co-occupiers.
 

 Although the right of control of one co-occupier over jointly occupied property includes the authority to give the police a consent to search the premises without the concurrence of the other co-occupier, it is not an absolute right of control. “A joint occupant’s right of privacy in his home is not completely at the mercy of another with whom he shares legal possession. [Citations.]”
 
 (Tompkins
 
 v.
 
 Superior Court
 
 (1963) 59 Cal.2d 65, 69 [27 Cal.Rptr. 889, 378 P.2d 113].) But
 
 Tompkins
 
 also tells us that “O' Joint occupancy of property, particularly residential property, obviously demands reasonable restrictions on the right of each joint occupant either by himself or through another to exercise full control over the property at all times regardless of the wishes of another joint occupant present on the premises.”
 
 (Tompkins, supra,
 
 59 Cal.2d 65, at p. 69.)
 

 But in
 
 Russi
 
 v.
 
 Superior Court
 
 (1973) 33 Cal.App.3d 160 [108 Cal.Rptr. 716], we have the situation of a cotenant who was a probationer and, as a condition of probation, had given a consent for police officers to search his residence. The probationer cotenant was occupying premises jointly with the petitioner in
 
 Russi.
 
 The
 
 Russi
 
 court held that petitioner, even though present, could
 
 not
 
 invalidate the probationer’s consent to search the residence.
 

 The case at bench is analogous to the situation presented in
 
 Russi.
 
 Under the doctrine announced in
 
 Russi,
 
 even if defendant in the instant case had
 
 expressly
 
 refused to consent to the officers’ search of the apartment, the refusal to give consent as a cotenant would have been invalid. The
 
 Russi
 
 principle represents an exception to the rule that “if both occupiers are present when the police seek a consent to search, a consent by one will be deemed valid so long as the other made no objection. On the other hand, if two cotenants are present, such as husband and wife, and one gives the police permission to search and the other refuses, it would appear reasonable to hold that the non consenting
 
 *587
 
 co-occupant’s right to privacy should prevail to preclude a valid search.”
 
 (People
 
 v.
 
 Reynolds
 
 (1976) 55 Cal.App.3d 357, 369 [127 Cal.Rptr. 561].)
 

 On the premise that the entry into the apartment occupied by defendant was illegal, defendant argues that her subsequent consent to the officer’s request to search her apartment was necessarily invalid. Defendant relies on the case of
 
 People
 
 v.
 
 Haven
 
 (1963) 59 Cal.2d 713 [31 Cal.Rptr. 47, 381 P.2d 927]. The
 
 Haven
 
 case does state: “A search and seizure made pursuant to consent secured immediately following an illegal entry or arrest, however, is inextricably bound up with the illegal conduct and cannot be segregated therefrom.”
 
 (Haven, supra, 59
 
 Cal.2d 713, at p. 719.)
 

 But the statement in
 
 Haven
 
 can have no application unless the original entry is illegal. In the instant case, the police entry was based on a prior consent by David to enter and search. We have pointed out previously that David’s prior consent given as a condition of his parole was valid and violated no constitutional rights of David. Had there not been this prior consent by David, defendant’s position would be supported by the
 
 Haven
 
 principle that an illegal entry vitiates a subsequent consent to search.
 

 Under the circumstances presented in the case at bench, whether defendant’s consent was free and voluntary or a mere submission to authority becomes an
 
 irrelevant
 
 consideration. Even assuming that defendant’s consent to the search was not a free and voluntary consent, “she had no legal authority to prevent it.”
 
 (People
 
 v.
 
 Thomas
 
 (1975) 45 Cal.App.3d 749, 756 [119 Cal.Rptr. 739].) The position of defendant in the instant case is similar to that of the defendant in
 
 Thomas
 
 and in
 
 Russi.
 
 The
 
 Thomas
 
 court approved of the statement found in
 
 Russi
 
 that “ ‘[i]n our opinion, if the entry and search was reasonable and lawful as to the probationer cotenant, petitioner’s consent is irrelevant and
 
 he is in no position
 
 to claim that the officers did not have the right to search the premises and seize any contraband discovered in the process. [¶] . . . If, for argument, it is conceded that a third person’s right of privacy may be diminished, such diminution (a deprivation of the right of a probationer’s spouse, paramour, or other cotenant to refuse police entry and search of the common property) is but incidental to the public interest
 
 *588
 
 served.’ ”
 
 (Thomas, supra,
 
 45 Cal.App.3d 746, at pp. 756-757.) (Italics in original.)
 

 The judgment appealed from is affirmed.
 

 Kingsley, Acting P. J., and Dunn, J., concurred.
 

 [1]
 

 "Issues cognizable on an appeal following a guilty plea are limited to issues based on ‘reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings’ resulting in the plea. (§ 1237.5; see also
 
 People
 
 v.
 
 Ribero
 
 (1971) 4 Cal.3d 55, 60-64 [92 Cal.Rptr. 692, 480 P.2d 308].)”
 
 (People
 
 v.
 
 DeVaughn
 
 (1977) 18 Cal.3d 889, 895-896 [135 Cal.Rptr. 786, 558 P.2d 872].)
 

 [2]
 

 The
 
 Bushman
 
 case referred to is
 
 In re Bushman
 
 (1970) 1 Cal.3d 767 [83 Cal.Rptr. 375. 463 P.2d 727],