[Crim. No. 20580. First Dist., Div. One. April 30, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
SHARON LaJOCIES et al., Defendants and Appellants.

COUNSEL

John C. Schaller for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Thomas A. Brady and Kristoffer Jorstad, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

NEWSOM, J.—This is an appeal from judgments of convictions entered upon appellants' guilty pleas: appellant Sharon LaJocies (hereinafter Sharon) of possession of a concealable weapon by a felon (Pen. Code, § 12021, subd. (a)), and appellant Ronald LaJocies (hereinafter Ron) of possession of a slungshot (Pen. Code, § 12020, subd. (a)).

Before entering guilty pleas, appellants challenged the search of their residence and seizure of the evidence upon which the charges against them were based at both their preliminary hearing and in superior court by way of a section 1538.5 motion to suppress and a section 995 motion to dismiss. Sharon also filed a motion to strike her prior conviction. All evidentiary objections and pretrial motions were denied, after which appellants pled guilty and took this appeal.

The facts relating to that search may be summarized as follows:

Appellant Ron was a parolee residing with his wife Sharon in San Jose and supervised by Parole Agent Chuck Pearce. His parole stemmed from a prior conviction for the sale of amphetamines.

On May 8, 1979, Agent Pearce received positive results from a urinalysis test, which indicated that Ron had ingested amphetamines. For that reason, Pearce visited Ron's home on May 15, 1979, and, after receiving no response, left his card with a note asking Ron to "please contact" him. He returned on May 24, 1979, and found Ron at home. While discussing the results of the urinalysis test with Ron, he observed a billy club and a buck knife in the residence, the possession of which he believed to be in violation of the terms of Ron's parole.

He told Ron to report to his office on the same day for testing and further counseling. However, Ron did not report to Pearce's office until May 29, 1979, and, therefore, was arrested upon his arrival.[1]

Pearce then enlisted the assistance of other officers and went to appellants' residence to conduct a "parole search." Ron was informed of their intentions and accompanied the officers.

The officers approached the front door and knocked. Sharon answered, was shown identification, and was informed that the officers intended to make a search of the house pursuant to the conditions of her husband's parole. Sharon was asked to put her dogs in the back yard. While she was doing so, the officers opened the screen door and proceeded to search the house. They found marijuana, amphetamines, a .25 caliber pistol and several homemade weapons. After seizure of these items, Sharon was arrested.

## I

Appellants contend that the search of their residence was unlawful and assert a number of grounds in support of this contention.

First, they argue that the officers did not comply with the knock and notice requirements of Penal Code section 1531 prior to entry into the residence. Specifically, they assert that the officers failed to give Sharon a reasonable opportunity to permit peaceable entry as required by the statute.

As appellants suggest, compliance with statutory knock notice requirements is not excused by the mere fact that the search was being conducted pursuant to a parole search condition. (*People* v. *Rosales* (1968) 68 Cal.2d 299, 303-304 [66 Cal.Rptr. 1, 437 P.2d 489]; *People* v. *Ford* (1975) 54 Cal.App.3d 149, 154 [126 Cal.Rptr. 396].) Appellants also correctly point out that under section 1531, an officer, after giving notice of his authority and purpose, must allow an occupant a reasonable opportunity to respond before entering a residence to conduct a search. (*People* v. *Berkeley* (1978) 88 Cal.App.3d 457, 459-460 [151 Cal.Rptr. 686]; *People* v. *Vollheim* (1978) 87 Cal.App.3d 538,

---

[1]According to Agent Pearce, Ron was arrested for "not reporting on the 24th . . . for the dirty amphetamine test," and for possession of the weapons which the agent had seen during his earlier visit to appellant's residence.

541 [150 Cal.Rptr. 837]; *People* v. *Abdon* (1972) 30 Cal.App.3d 972, 977-978 [106 Cal.Rptr. 879].)[2]

 In the present case, Agent Pearce properly announced his identity and purpose to Sharon, after which he asked that the dogs be taken to the rear of the residence. While Sharon was complying with Agent Pearce's request, the officers opened the screen door and entered the residence. The record does not reflect that the officers were either refused admittance or allowed Sharon a reasonable time in which to admit them.

While strict compliance with statutory dictates may not be indicated by the evidence, we conclude that the entry was lawful under the recognized substantial compliance exception to the knock and notice rule. (*People* v. *Webb* (1973) 36 Cal.App.3d 460, 465 [111 Cal.Rptr. 524].) Substantial compliance will satisfy knock and notice requirements when, although attempted compliance falls short of strict literal compliance, the policies and purposes of the requirements have been satisfied. (*People* v. *Peterson* (1973) 9 Cal.3d 717, 722-723 [108 Cal.Rptr. 835, 511 P.2d 1187]; *People* v. *Turner* (1976) 54 Cal.App.3d 500, 504 [126 Cal.Rptr. 652]; *People* v. *Bigham* (1975) 49 Cal.App.3d 73, 80 [122 Cal.Rptr. 252].)

 In our view, the underlying policies of section 1531 were not frustrated by the officer's conduct in the present case. The policy considerations behind the statute are protection of the individual's right to residential privacy, and the avoidance of situations conducive to the risk of violence to occupants or police officers which would often attend entry by an unknown intruder. (*People* v. *Peterson, supra*, 9 Cal.3d at pp. 723-724; *People* v. *Turner, supra*, 54 Cal.App.3d 500, 504; *Garcia* v. *Superior Court* (1973) 29 Cal.App.3d 977, 981 [106 Cal.Rptr. 98].) Here, neither appellant's privacy nor a violent confrontation was threatened by the officers' failure to delay their entry into the residence.

Sharon knew of the officers' purpose, and by her actions implicitly acquiesced in the entry. Moreover, the intrusion upon her privacy was not

---

[2]This requirement is not contained in Penal Code section 844, which refers to execution of warrants of arrest. (*People* v. *Berkeley, supra*, 88 Cal.App.3d at p. 460.) It is based upon the language of section 1531, which states: "The officer may break open any outer or inner door ... if, after notice of his authority and purpose, *he is refused admittance*." (Italics added.)

made greater because the officers entered before she returned from the rear of the residence. Ron's privacy was also not infringed upon by the manner in which the residence was entered. Ron had already been arrested, and was in custody outside the residence. Further, as a parolee, he had waived his claim to privacy in his home. (*People v. Constancio* (1974) 42 Cal.App.3d 533, 543 [116 Cal.Rptr. 910].)

It is equally clear that the risk of a violent confrontation was not increased by the manner of entry, as Sharon had been told of the officer's intentions, and, in fact, was in the process of making preparations for the search at the time the officers entered the residence. We thus reject any notion that failure to strictly comply with the statute resulted in a greater risk that the occupants might respond violently by reason of ignorance of the officers' identity and purpose. (*People v. Peterson, supra,* 9 Cal.3d 717, 723-724.)

We conclude that in the particular circumstances of this case there was substantial compliance with 'section 1531, and also that the underlying purposes and policies of the statute were served by the conduct of the officers. (*People v. Brownlee* (1977) 74 Cal.App.3d 921, 929 [141 Cal.Rptr. 685]; *People v. Murphy* (1974) 42 Cal.App.3d 81, 88 [116 Cal.Rptr. 889]; *People v. Lamb* (1972) 24 Cal.App.3d 378, 381 [101 Cal.Rptr. 25]; *People v. Bustamante* (1971) 16 Cal.App.3d 213, 218-219 [94 Cal.Rptr. 64].)

■ Appellants next challenge the search by arguing that it cannot be justified as either incident to the arrest of Ron or pursuant to a condition of his parole. We find no merit in this argument.

Respondent has never attempted to justify the search as being incidental to arrest. Rather, the search was obviously based upon the following pertinent condition of Ron's parole: "You and your residence and any property under your control may be searched without a warrant." Contrary to appellants' interpretation of this condition, it authorized the search of the residence even though the property in that residence may not have been effectively under Ron's "control" at the time of his arrest.

Citing *Tompkins v. Superior Court* (1963) 59 Cal.2d 65 [27 Cal.Rptr. 889, 378 P.2d 113], Sharon claims that, notwithstanding Ron's parole status, her right to be free from unreasonable searches and seizures required a warrant, or her consent, prior to the search. In

*Tompkins*, our high court concluded that "one joint occupant who is away from the premises may not authorize police officers to enter and search the premises over the objection of another joint occupant who is present at the time, at least where as in this case, no prior warning is given, no emergency exists, and the officer fails even to disclose his purpose to the occupant who is present or to inform him that he has the consent of the absent occupant to enter." (*Id.*, at p. 69.)

*Tompkins*, however, is inapplicable here for the instant search was made pursuant to a parole condition, and so Sharon's consent, as a joint occupier of the residence, was unnecessary. (*People* v. *Icenogle* (1977) 71 Cal.App.3d 576, 586 [139 Cal.Rptr. 637]; *People* v. *Thomas* (1975) 45 Cal.App.3d 749, 756-757 [119 Cal.Rptr. 739]; *Russi* v. *Superior Court* (1973) 33 Cal.App.3d 160, 168 [108 Cal.Rptr. 716].) The officers clearly had a right to search those portions of the house occupied by Ron and to which he had access. (*People* v. *Johnson* (1980) 105 Cal. App.3d 884, 888 [164 Cal.Rptr. 746]; *Russi* v. *Superior Court, supra*, 33 Cal.App.3d at p. 168.)

■ Finally, appellants challenge the denial of their motion to suppress on the ground that the trial court failed to make an independent determination on the suppression motion as mandated by Penal Code section 1538.5, subdivision (i), which states: "The defendant shall have the right to litigate the validity of a search or seizure de novo on the basis of the evidence presented at a special hearing." Appellant's argument is based upon the trial court's finding that "on this record there was sufficient evidence upon which the magistrate could find compliance with the knock notice statute." Appellants complain that this finding reveals a failure of the trial court to consider the facts anew.

The record shows, however, that appellants were afforded the opportunity of a de novo hearing, but instead chose, pursuant to stipulation, to rely solely upon the evidence offered at their preliminary examination. Under such circumstances, the preliminary hearing transcript was properly considered by the trial judge. (*Wilder* v. *Superior Court* (1979) 92 Cal.App.3d 90, 94 [154 Cal.Rptr. 494].) Moreover, the court made an independent finding that the parole search was lawful, and thus properly determined the issue de novo as required by section 1538.5, subdivision (i). (*People* v. *Harrington* (1970) 2 Cal.3d 991, 996-997 [88 Cal.Rptr. 161, 471 P.2d 961].)

We conclude that the trial court did not err in denying appellant's motion to suppress.

## II

 Appellant Sharon claims that the trial court erred in denying her motion to strike a 1976 conviction for a violation of Penal Code section 4573.5 (bringing drugs into prison), and, consequently, that her present conviction—for possession of a firearm by a felon—is based upon a constitutionally invalid prior conviction. She argues that the minute order of her prior guilty plea, dated March 25, 1976, fails to adequately show advisement and waiver of her constitutional rights.

In our view, however, Sharon's guilty plea in the present action precludes her challenge to the prior conviction on appeal. Matters cognizable on appeal following a guilty plea are limited to issues based on "reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings" resulting in the plea. (Pen. Code, § 1237.5;[3] *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 895 [135 Cal.Rptr. 786, 558 P.2d 872]; *People* v. *Suite* (1980) 101 Cal.App.3d 680, 689 [161 Cal.Rptr. 825]; *People* v. *Lee* (1980) 100 Cal.App.3d 715, 717 [161 Cal.Rptr. 162].) Under section 1237.5, "Other than search and seizure issues which are specifically made reviewable by section 1538.5, subdivision (m), all errors arising prior to entry of a guilty plea are waived, except those which question the jurisdiction or legality of the proceedings resulting in the plea." (*People* v. *Kaanehe* (1977) 19 Cal.3d 1, 9 [136 Cal.Rptr. 409, 559 P.2d 1028]; *People* v. *Hayton* (1979) 95 Cal.App.3d 413, 416 [156 Cal.Rptr. 426].) "The reason for this rule is that 'a plea of guilty admits all matters essential to the conviction.'" (*People* v. *Lee, supra,* 100 Cal.App.3d at p. 717; *People* v. *Hayton, supra,* 95 Cal.App.3d at p. 416.)

---

[3]Penal Code section 1237.5 provides: "No appeal shall be taken by defendant from a judgment of conviction upon a plea of guilty or nolo contendere, or a revocation of probation following an admission of violation, except where: [¶] (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings; and [¶] (b) The trial court has executed and filed a certification of probable cause for such appeal with the county clerk."

The Supreme Court has interpreted this section to refer only to the proceedings "resulting in the plea." (*People* v. *DeVaughn* (1977) 18 Cal.3d 889, 895 [135 Cal.Rptr. 786, 558 P.2d 872]; *People* v. *Williams* (1980) 103 Cal.App.3d 507, 511 [163 Cal.Rptr. 169].)

█ Appellant here does not assert errors in the proceeding which resulted in her guilty plea. Rather, she challenges the validity of a prior conviction, based upon alleged errors which occurred in proceedings conducted well before the entry of a guilty plea in this action. Moreover, by such guilty plea Sharon admitted all elements of the offense, including her prior felony conviction.

█ In *People* v. *Pinon* (1979) 96 Cal.App.3d 904 [158 Cal.Rptr. 425], after pleading guilty to a violation of Penal Code section 12021—possession of a firearm by a person convicted of a felony—defendant sought reversal of his conviction based upon an argument that his prior burglary conviction was in fact a misdemeanor, and that his trial counsel was constitutionally inadequate for not recognizing that fact. (*Id.*, at p. 909.) In ruling that the issue was not cognizable on appeal because it did not relate directly to the proceedings resulting in defendant's guilty plea, the court explained: "The issues presently sought to be raised do not attack the proceedings resulting in the plea. Rather, defendant's contention that the prior conviction was a misdemeanor rather than a felony, and the related contention that counsel was incompetent, go solely and directly to the question whether he was in fact guilty of the charged offense. However, his plea of guilty 'operated to remove such issues from consideration as a plea of guilty admits all matters essential to the conviction.' (*Id.*; see also *People* v. *Massey* (1976) 59 Cal.App.3d 777, 780 ....) Consequently, these issues are simply not cognizable on the present appeal, whether or not defendant obtained a certificate of probable cause." (*Id.*, at p. 910.)

█ We find the reasoning and ruling of *Pinon* persuasive here. Accordingly, even though Sharon's challenge to her prior conviction raises constitutional issues, we conclude that by entering a plea of guilty, she waived the right to assert such errors on appeal. (*People* v. *Lee, supra*, 100 Cal.App.3d 715, 717; *People* v. *Pinon, supra*, 96 Cal.App.3d 904, 910; *People* v. *Hayton, supra*, 95 Cal.App.3d 413, 416.)[4]

That Sharon obtained a certificate of probable cause does not alter this conclusion. █ As noted in *Pinon, supra*, and numerous other decisions, a certificate of probable cause does not make cognizable those issues which have been waived by a plea of guilty. (*People* v. *Kaanehe, supra*, 19 Cal.3d 1, 9; *People* v. *Lee, supra*, 100 Cal.App.3d

---

[4]In both *Lee* and *Hayton*, it was ruled that section 1237.5 precluded consideration of defendants' speedy trial claims, even though they were constitutional and fundamental.

715, 717; *People* v. *Massey* (1976) 59 Cal.App.3d 777, 780 [130 Cal.Rptr. 581].) "The issuance of a certificate of probable cause pursuant to section 1237.5 does not operate to expand the grounds upon which an appeal may be taken as that section relates only to the 'procedure in perfecting an appeal from a judgment based upon a plea of guilty.'" (*People* v. *DeVaughn, supra,* 18 Cal.3d 889, 896.)

██ We would reject appellant's claim even if we were to conclude that she had the right to pursue it on appeal. Sharon failed to raise the issue directly by timely appeal from the prior judgment, and has waited more than three years before collaterally challenging it here. Our high court in *In re Ronald E.* (1977) 19 Cal.3d 315, 321-322 [137 Cal.Rptr. 781, 562 P.2d 684], specifically held that a collateral challenge to a prior conviction may be denied for lack of diligence. The court explained that a defendant cannot use a collateral proceeding "as a substitute for ... failure to take expeditious appeals, absent special circumstances constituting an excuse for such failure." (*Id.,* at p. 322; see also *People* v. *Davis* (1980) 103 Cal.App.3d 270, 276 [163 Cal.Rptr. 22].)

Sharon has not offered any explanation for her lack of diligence in challenging the prior conviction. She has not asserted, for instance, that "[her] failure to challenge such claimed improprieties was predicated upon a lack of knowledge of [her] constitutional rights at a time when [she] might have made a timely challenge." (*In re Ronald E., supra,* 19 Cal.3d 315, 322.)[5] Consequently, she may not raise the issue here for lack of due diligence. (*People* v. *Davis, supra,* 103 Cal.App.3d 270, 276.)[6]

---

[5]*In re Ronald E.* indicates that such an allegation might excuse a delay in challenging a prior conviction. (*Id.,* at p. 322.)

[6]We note that in the recent case of *People* v. *Cota,* ██ Division Two of this district, specifically held that a defendant charged with possession of a concealable firearm by a felon (Pen. Code, § 12021, subd. (a)) may not raise as a defense the invalidity of the underlying felony conviction. The court concluded: "We find nothing on the face of the statute in question or in its history which would indicate that the Legislature intended to exempt from section 12021 one whose status as a convicted felon changed after the date of possession, regardless of how that change in status occurred." Thus, even if we were to strike appellant's prior conviction for constitutional invalidity, it would not furnish a ground for reversal of the present conviction.

The judgments are affirmed.

Racanelli, P. J., and Grodin, J., concurred.