[Crim. No. 17703. First Dist., Div. One. Dec. 19, 1978.]

THE PEOPLE, Plaintiff and Appellant, v.
RANDOLPH CARTER BERKELEY III, et al.,
Defendants and Respondents.

458

**COUNSEL**

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Appellant.

Thomas Roland for Defendants and Respondents.

## OPINION

**DEVINE, J.***—On April 23, 1977, a search warrant for premises in Newark was issued.[1] Shortly thereafter, five officers under the command of Detective Kasich proceeded to the house. Four were deployed to the front; Officer Lynch climbed over a fence in the rear. He encountered respondent Berkeley, who was on a sundeck clad in shorts sunning himself. Lynch announced his mission and told Berkeley to stay where he was and hold his dog. Berkeley asked to be allowed to open the front door. It was known by Lynch that Berkeley could enter, because he had taken a step or two inside. Lynch told him to stay where he was and let the people in the house answer.

Detective Kasich began to knock at the front door just then. He did not look for a doorbell although it was his belief that all the houses in the area had doorbells. His first knocking consisted of five or six raps. Berkeley moved to answer the door and Lynch told him to stay put and let the roommates answer it. Berkeley responded that they were asleep.

After about 30 seconds the knocking came again and Berkeley and Lynch responded as they had before. Along with this knocking was a yelled announcement that they were the police and had a search warrant. Almost immediately after this knocking, the door was kicked in and five officers entered. The ensuing search was rather dramatic: the officers pointed shotguns at a male occupant, who was in bed and had been asleep, and at a female (respondent Borders) in her bed. Search of the house produced cocaine, hashish, other drugs and a tear gas canister and a billy club. Additional facts appear at places within the discussion.

■ Upon motion under section 1538.5 of the Penal Code, the evidence was suppressed and the action was dismissed. The People appeal the dismissal of the action as it affects defendants Berkeley and Borders.

Section 1531 of the Penal Code allows an officer to break into a house only when, after notice of his authority and purpose, he is refused

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

[1]The statement of facts is given in the light most favorable to respondent, as is proper. (*People* v. *Lawler*, 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].)

admittance.[2] The officers were not refused admittance in this case. Berkeley expressly offered at least twice to open the front door. To be sure, the officers at the front were not apprised of this, but the failure of communication can be held, in the judgment of the trial court, to be chargeable to the police. They had walkie-talkie communication. Although this was turned off at some point in order to stifle noise, there could have been a call by Lynch to the officers in front announcing that the door would be opened. The officer in command actually had heard Lynch's voice from the rear. The distance was about 20 feet between the front door and Berkeley's position. A reasonably coordinated plan would have brought about disclosure of the offer to admit the officers; at least, this could be fairly concluded by the finder of fact.

The fact that the officers knew that guns had been taken from the premises in a burglary does not make the search subject to exception from the statutory demands. There was no information that other guns were at hand. ■ "Police knowledge of the existence of a firearm excuses compliance with announcement requirements only where the officers reasonably believe the weapon will be used against them if they proceed with the ordinary announcements. [Citations.] This belief must be based on specific facts and not on broad, unsupported presumptions." (*People* v. *Dumas,* 9 Cal.3d 871, 878-879 [109 Cal.Rptr. 304, 512 P.2d 1208].) Although *Dumas* refers to the necessary *announcements,* the rule relating to knowledge of the possible use of firearms established in that case is equally applicable to this case in which *an offer to allow entry* was refused.

The order of dismissal is affirmed.

Racanelli, P. J., and Newsom, J., concurred.

---

[2]This requirement is not contained in Penal Code section 844 referring to execution of warrants of arrest.