[No. A036874. First Dist., Div. Four. Nov. 24, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
LEONARD MILES, Defendant and Appellant.

## COUNSEL

Kathy M. Chavez, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Ronald E. Niver and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ANDERSON, P. J.**—Appellant was charged with possession of cocaine (Health & Saf. Code, § 11350) and with possession of a firearm (Pen. Code,[1] § 12021). The trial court denied appellant's motion to suppress evidence pursuant to section 1538.5. Following the trial court's denial of his section 1538.5 motion, appellant pled no contest to possession of cocaine (Health & Saf. Code, § 11350) and the court found appellant guilty of that offense. The trial court dismissed the firearm charge. We affirm.

### STATEMENT OF FACTS

At approximately 3 p.m., Officers Fisher and Risby received a police radio broadcast relaying information phoned in by an Oakland Taco Bell manager. The broadcast "indicated that several persons were walking around the Taco Bell [parking lot] . . . acting very suspicious and looking into the restaurant." The "people" were reported to be "throughout the parking lot" and "by a green Toyota . . . and a brown Chev[rolet]." The

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

broadcast apparently also stated that the Taco Bell manager was worried about the people because of a recent shooting in the parking lot.

The officers arrived at the Taco Bell parking lot in "no more than a minute or so." Upon their arrival, Officer Fisher "observed only two males . . . in the parking lot standing adjacent [to] a brown large vehicle." No mention is made in the record as to the make of the brown vehicle. The officer did not see the green Toyota.

As the officers entered the parking lot in their patrol wagon, one of the two men standing by the brown vehicle turned and walked toward the restaurant. Officer Risby exited the passenger side, followed and stopped that man. At the same time, Officer Fisher exited the driver's side and "walked towards the other gentleman [appellant] . . . standing by the larger brown vehicle." As the officer approached (a distance of "approximately 20-30 feet"), appellant, who was initially facing the officer, started to turn in "the other direction." When the officer came "within a few feet" of appellant, he turned back around. As he turned back around, Officer Fisher "could see an exaggerated bulge in [appellant's] jacket pocket." Officer Fisher felt that the "heavy object" in the appellant's pocket could "possibly [be] some kind of weapon." In fear for his own safety, the officer apparently directed appellant to place his hands on his head and then simultaneously pat-searched appellant. The pat search revealed a loaded revolver in the appellant's jacket pocket.

Appellant contends that he was temporarily detained by the police in violation of his rights under the state and federal Constitutions. We disagree.

## DISCUSSION

■■ There is no question that a police officer may approach a person on the street without having reasonable suspicion of criminal activity if the officer does not "detain" the person. (*Florida* v. *Royer* (1983) 460 U.S. 491 [75 L.Ed.2d 229, 103 S.Ct. 1319].) ■■ Accordingly, the threshold issue confronting this court is whether Officer Fisher "detained" appellant within the meaning of the Fourth Amendment of the United States Constitution and article I, section 13 of the California Constitution.[2] (*People* v. *Bower* (1979) 24 Cal.3d 638 [156 Cal.Rptr. 856, 597 P.2d 155].) ■■ If there is "no detention—no seizure within the meaning of the Fourth Amendment— then no constitutional rights have been infringed." (*Florida* v. *Royer, supra,* 460 U.S. at p. 498 [75 L.Ed.2d at p. 236]).

[2] Unless otherwise specified, the term "Fourth Amendment" as used in this opinion refers to both state and federal guarantees against unreasonable seizure.

Courts broadly define the term "detention." The United States Supreme Court in *Terry* v. *Ohio* (1968) 392 U.S. 1, 16 [20 L.Ed.2d 889, 903, 88 S.Ct. 1868], held that "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person" within the meaning of the Fourth Amendment. The California Supreme Court has found a detention whenever an officer accosts an individual on suspicion that the person "may be personally involved in some criminal activity . . . ." (*In re Tony C.* (1978) 21 Cal.3d 888, 895 [148 Cal.Rptr. 366, 582 P.2d 957].) ■ More recently, the California Supreme Court in *Wilson* v. *Superior Court* (1983) 34 Cal.3d 777, 790 [195 Cal.Rptr. 671, 670 P.2d 325], adopted the definitional standard enunciated by the United States Supreme Court in *United States* v. *Mendenhall* (1980) 446 U.S. 544 [64 L.Ed.2d 497, 554, 100 S.Ct. 1870]: "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." ■ Thus, we must resolve whether a reasonable person in appellant's position would have believed that he was not free to leave.

The record affirmatively establishes that appellant was detained. Though Officer Fisher's mere approach did not amount to a detention (*Florida* v. *Royer, supra,* 460 U.S. 491), the sequence of events following his approach demonstrate that a reasonable person in appellant's position would not feel free to leave. As the court stated in *People* v. *Washington* (1987) 192 Cal.App.3d 1120, 1126 [236 Cal.Rptr. 840], "If the officer takes any affirmative action indicating his intention at preventing the person from leaving, the officer is exercising a restraint on the person such that a reasonable person would not feel he is able to leave." Under such an approach the detention occurred at the point the officer ordered appellant to place his hands on his head and pat-searched appellant.

Ordinarily, the legality of a temporary detention and of a frisk or pat search are separately analyzed. (*Terry* v. *Ohio, supra,* 392 U.S. 1.) The facts as given by Officer Fisher, however, establish that the detention and pat search occurred nearly simultaneously. Even though the detention and pat search occurred simultaneously and the pat search alone may be entirely justifiable, an issue not raised on appeal, it is apparent that a frisk is such a limitation on a person's freedom of movement that it necessarily means that the person has been detained.

Not every detention, however, will violate the Fourth Amendment. ■ It is a well-established rule that certain temporary seizures short of arrest based upon probable cause are justifiable under the Fourth Amendment. The California Supreme Court in *In re Tony C., supra,* 21

Cal.3d at page 893, stated the test governing the validity of an investigative stop or detention. In order to justify an investigative detention "the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must [the officer] . . . subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience [citation], to suspect the same criminal activity and the same involvement by the person in question." (*Ibid.*) Stated succinctly, "where the officer subjectively has a reasonable and articulable suspicion based upon objective facts that the person to be detained is involved in crime which has occurred, is occurring, or is about to occur," the detention is valid. (*People* v. *Wilkins* (1986) 186 Cal.App.3d 804, 808 [231 Cal.Rptr. 1].) An investigative stop or detention "predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith." (*In re Tony C., supra,* 21 Cal.3d at p. 893.)

■ We must determine whether the People have met their burden of justifying the detention. (*People* v. *Bower, supra,* 24 Cal.3d at p. 644.) ■ The reasonableness of a detention must be determined on the facts peculiar to each case. (*Terry* v. *Ohio, supra,* 392 U.S. at p. 16 [20 L.Ed.2d at p. 903].) ■ Because the facts here are undisputed, "there is no factual issue entitled to a substantial evidence standard of review; rather, it is the ultimate responsibility of this court to measure the facts as found by the trier against constitutional standards. [Citation.]" (*People* v. *Aldridge* (1984) 35 Cal.3d 473, 477 [198 Cal.Rptr. 538, 674 P.2d 240].)

Appellant urges us, in essence, to conclude that the facts here are such that a reasonable police officer in a like position, drawing on his training and experience would not have reasonably suspected appellant of any involvement with criminal activity. ■ Applying the *Tony C.* standard, we find that the detention does comply with constitutional principles. To evaluate "the reasonableness of a detention, . . . 'the totality of the circumstances—the whole picture—must be taken into account. . . . [A]n assessment of the whole picture must yield a particularized suspicion . . . that the particular individual being stopped is engaged in wrongdoing.' " (*People* v. *Loewen* (1983) 35 Cal.3d 117, 128-129 [196 Cal.Rptr. 846, 672 P.2d 436]; citing *United States* v. *Cortez* (1981) 449 U.S. 411, 417-418 [66 L.Ed.2d 621, 629, 101 S.Ct. 690].) Assuming Officer Fisher subjectively suspected appellant of some criminal wrongdoing (established by the trial court without issue), this court must make an independent determination whether the

officer's suspicion was reasonable. (*People* v. *Leyba* (1981) 29 Cal.3d 591 [174 Cal.Rptr. 867, 629 P.2d 961].)

Upon arriving at the lot, the officers' actions with respect to the appellant were reasonable. When Officer Fisher approached defendant in the parking lot, defendant turned away. As he did so, the officer saw "an exaggerated bulge" in defendant's left jacket pocket and that the jacket "swung pretty freely" in the officer's direction. Because of the bulge and the manner in which the jacket swung, the police officer "knew it was some type of heavy object, possibly a gun." But the officer conceded, it could have been "any heavy object."

These facts alone make it objectively reasonable for the officer to believe that defendant was presently committing the crime of possessing a concealed weapon in his jacket—a violation of section 12025. Where an officer observes an individual whom he suspects is associated with a crime that "has taken place or *is occurring* . . . the person he intends to stop or detain is involved in that activity," the officer is justified in the detainment. (*In re Tony C., supra,* 21 Cal.3d at p. 893, italics added.)

Appellant argues that "to justify [appellant's] detention and search on the grounds that he had a heavy object in his pocket would mean that the police could detain and search everyone they observed with heavy objects in their pockets . . . ." Appellant's contention is misguided, for the record clearly establishes that the officer reasonably suspected appellant of presently engaging in a crime. That crime was the concealment of a weapon. We conclude that a reasonable officer in the same circumstances, knowing what Officer Fisher knew, would suspect appellant of the same criminal act. The detention and subsequent pat search is therefore justified.

The judgment is affirmed.

Poché, J., and Sabraw, J., concurred.

A petition for a rehearing was denied December 18, 1987, and appellant's petition for review by the Supreme Court was denied February 17, 1988.