[No. D009011. Fourth Dist., Div. One. Mar. 28, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORY THOMAS ROTH, Defendant and Appellant.

COUNSEL

Donald H. Glaser, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Robert M. Foster and Pat Zaharopoulos, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WIENER, Acting P. J.**—Following denial of his motion to suppress evidence (Pen. Code, § 1538.5), Gregory Thomas Roth entered a negotiated

guilty plea pursuant to *People* v. *West* (1970) 3 Cal.3d 595 [91 Cal.Rptr. 385, 477 P.2d 409] to possession of a firearm by a felon (Pen. Code, § 12021). He appeals the denial of his suppression motion, contending the police officers acted illegally in detaining him and patting him down. We agree with the first contention, and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

*The People's Evidence*

At about 1:20 a.m. on February 7, 1988, reserve Deputy Sheriff Mark Boumpensiero and Deputy Hinton were conducting a security check of closed businesses in the Alpha Beta shopping center in Lakeside. It was a clear night and the temperature was moderate, not too cold. They saw Roth walking in the parking lot, about 30 yards from the Alpha Beta, westbound toward the front of the store. There was no one else in the parking lot and Boumpensiero saw no other cars in the area.

Boumpensiero shined his spotlight on Roth and stopped the patrol car. When the deputy hit him with the spotlight, Roth stopped walking. Both deputies got out of their car. Boumpensiero stood behind the door of the patrol car and asked Roth to approach, saying "I would like to talk to you" or "Come over here. I want to talk to you." Roth came to the patrol car. Boumpensiero said he would like to know what, if any, business Roth had at that time of the morning or what he was doing in the area. Roth said he was going to the Alpha Beta. After the deputy told him the store was closed, Roth said he was going to look in the Alpha Beta dumpsters for junk.[1]

Roth was wearing a heavy, bulky jacket or two jackets. After asking why he was there, Boumpensiero noticed a big bulge in the center of Roth's chest. For safety reasons, he asked him if he had any weapons. Roth said yes, and started to go for the weapon with his right hand. Boumpensiero said "No, that's no problem. I'll take it out for you." He placed Roth's hand on the hood of the patrol car, spread-eagled him on the car, and retrieved a framing hammer or ax. He removed Roth's jacket, then conducted a pat-down and found an unloaded .22 automatic and three knives.

Boumpensiero arrested Roth. A further search disclosed a baggie containing three-tenths of a gram of methamphetamine, three syringes, ammunition shells, and a baggie containing a green leafy substance.

---

[1] Alpha Beta's trash cans were at the southwest side of the store.

*Defense Evidence*

Roth testified he was coming from the other side of Lakeside, from an apartment about three blocks from the lake, and was headed to his sister's house. He was wearing two jackets because the weather was so cold.[2] There were at least half a dozen cars in the parking lot, although no one was out walking. As he was walking through the Alpha Beta parking lot, he saw the patrol car pull in at the other end of the lot and come straight toward him, stop about 20 feet away, and shine a spotlight on him. He froze because it seemed like the natural thing to do. The two deputies jumped out of the car, one coming straight to him and the other staying behind the car with his hand on his gun. The deputy asked him if he had any weapons. He said yes. He had a framing hammer in his jacket. The deputy took him to the patrol car and had him put his hands on the hood. He did not explain he was conducting a security check of the area, and did not ask Roth what he was doing until after Roth was in the patrol car.

## DISCUSSION

Roth contends the officers lacked sufficient grounds for detaining him and the patdown was unjustified.

Circumstances short of probable cause to arrest allow a police officer to stop and detain a person briefly for questioning and limited investigation. (*In re Tony C.* (1978) 21 Cal.3d 888, 892 [148 Cal.Rptr. 366, 582 P.2d 957].) A detention occurs when a reasonable person would believe he or she is not free to leave. (*Wilson* v. *Superior Court* (1983) 34 Cal.3d 777, 789-790 [195 Cal.Rptr. 671, 670 P.2d 325].)

A detention is justified where "the circumstances known or apparent to the officer . . . include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience . . . , to suspect the same criminal activity and the same involvement by the person in question." (*In re Tony C., supra,* 21 Cal.3d at p. 893, fn. omitted.) Mere curiosity, rumor, or hunch is insufficient despite the officer's good faith. (*Ibid.*)

---

[2] Roth admitted, however, neither deputy was wearing a jacket.

■ Viewing the facts in the light most favorable to respondent (*People v. Berkeley* (1978) 88 Cal.App.3d 457, 459, fn. 1 [151 Cal.Rptr. 686]), a detention occurred when Boumpensiero shined his spotlight on Roth, stopped the patrol car, both deputies got out, and Boumpensiero stood behind the car door, commanding Roth to approach so the deputy could speak to him.[3] (Cf. *People v. Bailey, supra*, 176 Cal.App.3d at p. 402.) In this situation, a reasonable person would not believe himself or herself free to leave. (Cf. *id.* at pp. 405-406.)

The sole ostensible ground for the detention was Roth's early morning presence in the deserted parking lot of a shopping center whose businesses were closed. The circumstances were devoid of indicia of his involvement in criminal activity. Indeed, here there was patently less to justify the detention than in *People v. Aldridge* (1984) 35 Cal.3d 473 [198 Cal.Rptr. 538, 674 P.2d 240], where the defendant's apparent attempt to avoid the police at night in "an area of continuous drug transactions" was insufficient to warrant a detention. (*Id.* at p. 478.) Similarly, in *People v. Wilkins* (1986) 186 Cal.App.3d 804 [231 Cal.Rptr. 1] the police illegally detained a defendant based on his furtive nighttime behavior in a high crime area. (*Id.* at p. 811.) Conversely, in *Santos v. Superior Court* (1984) 154 Cal.App.3d 1178 [202 Cal.Rptr. 6] the detention was lawful. There, in spite of a municipal ordinance prohibiting loitering around closed businesses, at 10 p.m. the defendant was standing in a closed parking lot in a high crime area with two other individuals who were exchanging an unidentified object. (*Id.* at pp. 1180-1182, 1184.) The only business open nearby was a liquor store with a different parking lot. (*Id.* at p. 1181.) The evidence here, on the other hand, is qualitatively less.

In light of our conclusion the detention was illegal, we need not reach Roth's contention the patdown was improper.

### DISPOSITION

The judgment is reversed and the cause remanded to the trial court. Upon a motion to withdraw Roth's guilty plea within 30 days of the finality of this decision, the trial court is directed to vacate the guilty plea, reinstate all charges and allegations in the information, and proceed in accordance with the views expressed in this opinion. If Roth fails to make a timely

---

[3] The trial court found: "[T]he officer was making some type of a detention. There can be no doubt about that because he issued a command to him." We accept the finding there was a command and, exercising our independent judgment, agree with the trial court there was a detention. (See *People v. Bailey* (1985) 176 Cal.App.3d 402, 406 [222 Cal.Rptr. 235]; *People v. Franklin* (1987) 192 Cal.App.3d 935, 940 [237 Cal.Rptr. 840].)

motion or waives the right to withdraw his plea, the trial court is directed to reinstate the judgment.

**TODD, J.—** ■■■■ I concur in the majority opinion because the trial court determined Officer Boumpensiero issued a command to Roth when he asked him to approach the patrol vehicle. The majority opinion quotes the officer's statement as being *either* "I would like to talk to you," *or* "Come over here. I want to talk to you." Based upon this conflicting recollection of what Officer Boumpensiero actually said to Roth, the trial court found a "command" and, thus, a detention. The officer had every right to approach Roth and determine the reason for his unusual appearance at this time and place. However, I am bound by the finding that what the trial court might have found only to be a "request" was actually a "command." (See *People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].)

Certainly the use of the vehicle spotlight was not enough to escalate an otherwise appropriate investigation contact into a detention. (See *People* v. *Franklin* (1987) 192 Cal.App.3d 935, 940-941 [237 Cal.Rptr. 840].) Unfortunately, Roth's physical proximity to the officer, disclosing the jacket-covered weapon bulge and probable cause for further investigation and arrest, only resulted from the officer's "command."

**NARES, J.,** Dissenting.—I agree a detention occurred. I dissent, however, because the Fourth Amendment requires only " 'some minimal level of objective justification' " for making the stop. (*United States* v. *Sokolow* (1989) 490 U.S. 1, 7 [104 L.Ed.2d 1, 10, 109 S.Ct. 1581, 1585].) Here, police found Roth walking alone at 1:20 a.m. in a deserted and closed shopping center wearing a bulky and, in light of the weather conditions, inappropriate jacket. These circumstances are suspicious. Holding the detention unlawful, the court essentially means the police officer wrongfully performed his duty in investigating what any fair-minded person would have to concede are at least minimally suspicious circumstances. I find such a conclusion not only difficult to accept philosophically, but legally as well.

In evaluating the validity of a stop such as this, we must consider the "totality of the circumstances—the whole picture." (*People* v. *Miles* (1987) 196 Cal.App.3d 612, 617 [242 Cal.Rptr. 107].) Here, there are at least three objective facts producing, in my view, ample justification for detention: time, location, appearance. On similar facts courts have held a detention lawful. For example, in *People* v. *Ellis* (1983) 113 Ill.App.3d 314 [446 N.E.2d 1282], police saw the defendant walking across a shopping center parking lot at 1:25 a.m. None of the stores were open. The defendant was not looking in any store windows. Residences were located near the

shopping center and a "rash of burglaries" had recently occurred in the area. (446 N.E.2d at pp. 1284-1285.) The court in *Ellis* held the officer was justified in detaining the defendant. Similarly, in *People* v. *Allen* (1975) 50 Cal.App.3d 896 [123 Cal.Rptr. 80], the court upheld a detention where police found the defendant walking alone at 2:35 a.m. in a used car lot. *Allen* states, "Believing that the presence of the defendant at the place and hour was unusual the officer decided to investigate." (*Id.* at p. 899.) Like the situations in *Ellis* and *Allen,* here the police did not act on a wild hunch, but instead detained Roth based on his presence at an unusual hour at deserted and closed business premises.

Whether reasonable suspicion exists is not "readily or even usefully, reduced to a neat set of legal rules." (*United States* v. *Sokolow, supra*, 490 U.S. at p. 7 [104 L.Ed.2d at p. 10, 109 S.Ct. at p. 1585].) Ultimately, the test is whether under the circumstances a reasonable person in the officer's position would determine a temporary detention was necessary to properly discharge his duties. (*People* v. *Allen, supra*, 50 Cal.App.3d at p. 901.) Here, I have difficulty imagining any reasonable officer not detaining Roth. The Fourth Amendment does not prohibit crime prevention. The officer properly performed his duties. Accordingly, I would affirm.

Respondent's petition for review by the Supreme Court was denied June 27, 1990. Arabian, J., was of the opinion that the petition should be granted.