Filed 1/23/14  P. v. Velles CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CLARENCE LARRY VELLES,<br><br>        Defendant and Appellant. | A136938<br><br>(Napa County<br>Super. Ct. No. CR161532) |

Defendant Clarence Larry Velles pleaded no contest to a drug possession charge after police found methamphetamine in his pocket.  Defendant was detained and searched when police watched him walk through a deserted commercial parking lot in the early hours of the morning, only to reverse course suddenly upon spotting them.  He contends the detention was not based on a reasonable suspicion of criminal activity.  We affirm.

## I.  BACKGROUND

In an amended information filed June 15, 2012, defendant was charged with possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) and drug paraphernalia (Health & Saf. Code, § 11364).  Following the trial court's denial of defendant's motion to suppress evidence pursuant to Penal Code section 1538.5, he pleaded no contest to the methamphetamine possession charge and was placed on three years' probation.

The sole issue at the hearing on defendant's motion to suppress was whether his detention was justified by a reasonable suspicion of criminal activity.  The primary witness, Officer Curtis Madrigal of the Napa Police Department, testified he was driving

a patrol car at 1:30 a.m. when he spotted defendant walking across a commercial parking lot serving several different businesses, including a grocery store and restaurant. The businesses appeared to Madrigal to be closed, and the area was very dark. During narcotics enforcement training two years earlier, Madrigal had been told the parking lot was one of the "areas [officers] might want to pay more attention to" because drug transactions had occurred there.

When defendant saw Madrigal's patrol car turn into the parking lot, he "went out of his way" to make a "quick" turn and begin walking toward the back of the grocery store, away from the car. He appeared to pass through some shrubbery, although later investigation revealed defendant had taken a path that led behind the shrubbery, rather than cut through it. Madrigal concluded defendant was attempting to "conceal[] himself" and "avoid contact" with him. He and his partner left the patrol car, and Madrigal told defendant to "come over here." Defendant complied. He was calm but avoided eye contact with Madrigal.

At this point in Madrigal's direct examination, defense counsel told the court, "[M]y motion is based on the initial detention. So I don't think . . . [the prosecutor] needs to go into all of what happened after the initial detention," and the prosecutor ended his examination. At the preliminary hearing, Madrigal had testified he searched defendant and found suspected methamphetamine and a glass pipe with residue.

In explaining its denial of the motion to suppress, the trial court cited the late hour, the closed businesses, the officer's knowledge of prior drug transactions in the area, and defendant's change of direction upon seeing the officers, which appeared to Madrigal to constitute evasion.

## II. DISCUSSION

Defendant contends the arresting officer lacked reasonable suspicion to justify his detention.

" 'The Fourth Amendment prohibits "unreasonable searches and seizures" by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. [Citations.] Because the "balance between the public

2

interest and the individual's right to personal security," [citation], tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity " 'may be afoot,' " [citation].' [Citation.] In making determinations of reasonable suspicion to justify a detention, reviewing courts 'must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting wrongdoing. [Citation.] This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." [Citations.] . . . [T]he likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.' " (*People v. Barnes* (2013) 216 Cal.App.4th 1508, 1514.) "[T]he possibility of innocent explanations for the factors relied upon by a police officer does not necessarily preclude the possibility of a reasonable suspicion of criminal activity. [Citations.] In determining whether a search or seizure was supported by a reasonable suspicion of criminal activity, ' "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." ' " (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 146–147.)

" 'An appellate court's review of a ruling on [a Penal Code section 1538.5 motion to suppress] is governed by well-settled principles: We defer to the trial court's findings of fact that are supported by substantial evidence, but in all other respects the court's ruling is subject to independent review. [Citation.]' " (*People v. Perrusquia* (2007) 150 Cal.App.4th 228, 232–233 (*Perrusquia*).)

The circumstances described above are materially indistinguishable from those of *People v. Souza* (1994) 9 Cal.4th 224 (*Souza*), in which the Supreme Court affirmed the trial court's finding of a reasonable suspicion to support a detention. The officer in *Souza* was patrolling a high-crime area in the wee hours when he noticed two people, one later identified as the defendant, standing near a parked car. The area was almost completely

3

dark. The defendant appeared to be talking to someone in the car. Suspecting an auto burglary in progress, the officer stopped his car and turned the spotlight on the parked car. The defendant ran away, while the persons in the car ducked down. (*Id.* at p. 228.) In affirming, the court held: "[A]n area's reputation for criminal activity is an appropriate consideration in assessing whether an investigative detention is reasonable under the Fourth Amendment. [Citations.] . . . [¶] The time of night is another pertinent factor in assessing the validity of a detention. . . . [¶] When in the course of investigating what he thought to be an auto burglary in progress, [the officer] directed his patrol car's spotlight toward the parked Ford, the car's occupants immediately bent down, and defendant fled. These evasive actions added support to the officer's suspicion that criminal activity was afoot, and that defendant was involved in that activity." (*Id.* at pp. 240–241.)

Similarly, defendant was found early in the morning in a commercial parking lot known by the arresting officer to be of particular concern for narcotics trafficking. Because the stores served by the parking lot were closed, there was no obvious reason for defendant's presence there, other than transit to another location. When defendant saw the patrol car, he turned quickly and walked in the opposite direction, conduct inconsistent with his merely passing through. Defendant's sudden turnabout was the type of evasive action that, when combined with the early hour and the particular location, raised a reasonable suspicion of criminal activity.

In arguing to the contrary, defendant cites a number of cases holding that, *in isolation*, the various factors cited by the trial court do not support a reasonable suspicion. (E.g., *People v.* Walker (2012) 210 Cal.App.4th 1372, 1391 [presence in high-crime area alone insufficient]; *Perrusquia, supra*, 150 Cal.App.4th at p. 234 [avoidance of contact with officer alone insufficient]; *People v. Valenzuela* (1994) 28 Cal.App.4th 817, 831 [same]; *People v. Roth* (1990) 219 Cal.App.3d 211, 215 [early morning presence in deserted parking lot with closed businesses alone insufficient].) While this is certainly true, the combination of these various factors can create sufficient suspicion to justify a brief detention, as *Souza* holds.

4

Defendant also argues his conduct did not constitute "flight," since he merely turned and walked away. While the United States Supreme Court has recognized "headlong flight" as the "consummate act of evasion" (*Illinois v. Wardlow* (2000) 528 U.S. 119, 124), classic flight—that is, running or driving away from police at high speed—is not required to create a reasonable suspicion of criminal activity. The bare fact of evasive conduct, whether or not of the headlong variety, gives rise to some suspicion. (*Souza, supra,* 9 Cal.4th at p. 241.) Defendant did not merely "walk[] away" from police, as he argues. He stopped on a dime and reversed course upon seeing them, eventually walking out of sight behind the shrubbery. In isolation, this might not justify detaining him. (*Perrusquia, supra*, 150 Cal.App.4th at p. 234.) When combined with the other factors present here, however, this milder form of evasion created a reasonable suspicion.[1] (*Souza,* at p. 241.)

Defendant also challenges the legality of the subsequent search. As noted above, however, defendant's counsel specifically told the court he was not challenging the legality of "what happened after the initial detention." He has therefore forfeited an appellate challenge to the legality of the search. (See *People v. Williams* (1999) 20 Cal.4th 119, 136.)

## III. DISPOSITION

The judgment of the trial court is affirmed.

---

[1] Defendant also faults Madrigal's testimony about the reported past drug sales in the parking lot. While this testimony was certainly too vague to support a reasonable suspicion on its own, it was sufficient under these circumstances.

5

_____
Margulies, Acting P.J.

We concur:


_____
Banke, J.


_____
Sepulveda, J.*

---

\* Retired Associate Justice of the Court of Appeal, First Appellate District assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

6