Filed 12/2/14  P. v. Masetti CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>    v.<br><br>CHRISTOPHER MASETTI,<br><br>       Defendant and Appellant. | C074201<br><br>(Super. Ct. No. CM037251) |

Defendant Christopher Masetti appeals following a plea of no contest to possession of methadone (count 1; Health & Saf. Code, § 11350, subd. (a)),possession of drug paraphernalia (count 2; Health & Saf. Code, § 11364.1), and a sentence of three years' probation.  Defendant contends the trial court erroneously denied his motion to suppress evidence.  (Pen. Code, § 1538.5[1]).  We shall affirm.

---

[1] Undesignated section references are to the Penal Code in effect at the time of the charged offenses.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant filed his motion to suppress before the preliminary hearing, alleging that the search and seizure occurred without a warrant, consent, or "other probable cause." He based this allegation on the following paragraph from the police report: "On 9-20-12 at about 2045 hrs[.] [a Butte County Sheriff's Deputy] observed a suspicious vehicle parked in the Columbine Rd[.] parking lot of Cedarwood Elementary School in Magalia. As [the deputy] pulled into the parking lot to investigate, the driver, [defendant], started the car and began backing out of the parking lot. [The deputy] activated [his] light bar and initiated a traffic stop."

The People opposed the motion, asserting: (1) The traffic stop of defendant's car was based on reasonable suspicion because there was no appropriate or lawful reason for defendant to be parked at an elementary school at 8:45 p.m.; (2) The pills found by the officer after the traffic stop were in plain view and therefore seizable; and (3) Once the pills were determined to be a controlled substance, the entire car could be validly searched.

Defendant's motion was heard together with the preliminary hearing. Butte County Sheriff's Deputy Matt Rackley, the only witness, testified as follows: On September 20, 2012, at around 8:45 p.m., Deputy Rackley was on routine patrol on the Columbine Road side of Cedarwood Elementary School. The road is a dead end. Behind the school, there is only school parking and a loading/unloading zone for children.

In the five years Rackley had been assigned to that area, he had been called to the school more than a dozen times to investigate burglaries, alarm calls, and vandalism, as well as narcotics use in the parking lots. He could not recall the date of the most recent prior incident, but it was within the last year. He had investigated narcotics violations in the parking lots at least six times.

2

It was dark at 8:45 p.m. on the night in question. There appeared to be no school function or school-related activity going on. There was only one car in sight, parked in the middle parking lot.

When Deputy Rackley saw that the car was occupied, he approached it in his patrol car. The car started and began to back out when Rackley was about 30 yards away. When the car started to back out, Rackley turned on his overhead lights and initiated a traffic stop and the vehicle stopped. As Rackley initiated the traffic stop, the driver of the other car "turned his torso towards the passenger seat and began to lean over." Rackley stated, "I saw his hands come off the steering wheel and move towards the passenger side." Rackley pulled up to the car's driver's side in "a T-bone configuration," got out of his patrol car, and contacted the driver (defendant). Rackley then saw someone in the passenger seat.

Recognizing the passenger, Jennifer N., from prior contacts, Deputy Rackley ran a warrant check on her and discovered that she had active misdemeanor warrants. After asking her to get out of the car, he handcuffed her, leaving the door open, and escorted her back to his patrol car.

Jennifer N. asked if Rackley could go back to defendant's car and get her jacket. As Deputy Rackley approached the car, he saw a baggie containing 20 white tablets beside the passenger seat next to the door frame. Jennifer N. said they were methadone, which Rackley later confirmed by consulting an online data base called "drugs.com." Based on his training and experience, Rackley concluded the tablets were a usable amount of methadone.

When Deputy Rackley spoke further to Jennifer N. in his patrol car, she told him that defendant had contacted her earlier in the evening, asking to meet with her. After he picked her up, they drove to a store to get cigarettes and then went to the parking lot. As he saw Rackley approaching, defendant placed the baggie containing the methadone on

3

the passenger side of the car. He had previously taken four or five pills from the baggie and put them in his right sock, along with a syringe.

Deputy Rackley went back to defendant's car and asked him about the pills in the car. Defendant said they belonged to Jennifer N. Rackley asked defendant to step out of the car and asked if he had any narcotics or syringes with him. Defendant said he did not. Based on the information Jennifer N. had given Rackley, he grabbed defendant's right pants leg and pulled it up. A syringe fell out. Rackley asked if defendant had anything else. Defendant said he had three or four methadone tablets in his sock. Rackley found four methadone tablets in the sock, a usable amount.

The parties stipulated that the search and seizure were done without a warrant and that defendant had a reasonable expectation of privacy in the places searched.

The prosecutor argued that the case began with "effectively a *Terry* stop" [2] because the officer had reasonable suspicion of criminal activity afoot when he saw a car parked in a school parking lot which had been the focus of prior criminality, at a time when there were no school-related events going on and no valid reason for the car to be there. Even if there might be an innocent explanation for the car's presence, the officer had a right to investigate it. Once the officer saw defendant's furtive movements as the traffic stop was underway, then saw the narcotics in the car in plain view, then obtained information from the passenger, the officer had probable cause to believe narcotics were on defendant's person. Alternatively, the officer had probable cause to arrest defendant for possession of the pills in the car, and the search of defendant's person was valid as a search incident to arrest.

Defense counsel argued that the mere presence of a car in a parking lot, absent any specific knowledge of how recently crimes had occurred there before, gave rise to

---

[2] *Terry v. Ohio* (1968) 392 U.S. 1, 21-22 [20 L.Ed.2d 889, 906].

4

nothing more than a "hunch" that something might be wrong, not to reasonable suspicion justifying a traffic stop. Furthermore, the search of defendant's pants leg, based only on the passenger's allegation, was invalid.

The magistrate denied the motion to suppress evidence, finding that under all the circumstances the officer's knowledge of past crimes at the site gave rise to reasonable suspicion justifying an investigative detention, and the officer's further actions "flow[ed] lawfully" from the detention.

Defendant renewed the motion after his arraignment at the preliminary hearing. The only new fact cited in support of the motion was Deputy Rackley's admission that he could not state when the most recent prior incident of criminality at the school had taken place. Defendant asserted that the traffic stop was unlawful because there was no evidence providing probable cause that a crime was being committed or that defendant had been involved in prior crimes in the vicinity.

In response, the People stated that reasonable suspicion, not probable cause, is the standard for a traffic stop, and that defendant had not offered new evidence to justify renewing the motion.

The trial court summarily denied the renewed motion.

Defendant thereafter entered a plea of no contest to both counts alleged.

## DISCUSSION

Defendant contends the magistrate erred by denying his motion to suppress evidence because his detention was not based on reasonable suspicion. We disagree.

In reviewing the magistrate's ruling on a motion to suppress, we defer to the magistrate's factual findings if supported by substantial evidence, but exercise our independent judgment as to whether the search or seizure was constitutionally reasonable. (*People v. Glaser* (1995) 11 Cal.4th 354, 362 (*Glaser*).)

" 'A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the

5

circumstances, provide some objective manifestation that the person detained may be involved in criminal activity.' [Citation.]" (*People v. Hernandez* (2008) 45 Cal.4th 295, 299.) Even if the circumstances observed by the officer might have an innocent explanation, they may still give rise to a reasonable suspicion which entitles the officer to perform an investigative detention. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 146; *Glaser*, *supra*, 11 Cal.4th at p. 373; *People v. Souza* (1994) 9 Cal.4th 224, 242 (*Souza*).) However, "mere curiosity, rumor, or hunch is insufficient despite the officer's good faith. [Citation.]" (*People v. Roth* (1990) 219 Cal.App.3d 211, 214 (*Roth*).)

Although a person's presence in a high-crime area is not enough by itself to create a reasonable suspicion that he is involved in criminal activity, the "setting is a factor that can lend meaning to the person's behavior. [Citations.]" (*People v. Limon* (1993) 17 Cal.App.4th 524, 532.) "The time of night is another pertinent factor in assessing the validity of a detention." (*Souza*, *supra*, 9 Cal.4th at p. 241.) A suspect's "evasive conduct" and "sudden flight" from police also tend to establish the existence of reasonable suspicion. (*Id.* at p. 242.)

Here, defendant's car was the only one parked at night in a school parking lot when no school activity was going on. The lot and the school grounds had been a frequent venue of criminal activity, including narcotics transactions. When defendant saw Deputy Rackley's patrol car, he started to back up with the apparent intent of evading and fleeing from the officer. Under these circumstances, the deputy had ample grounds to initiate a traffic stop to perform a brief investigative detention. The deputy initiated the stop by activating his overhead lights. As he initiated the traffic stop, the deputy observed defendant making a furtive movement consistent with an attempt to discard or conceal contraband. We see the furtive movement as an extension of defendant's evasive maneuver to leave the scene after seeing the deputy's patrol vehicle. This circumstance added to the grounds supporting the justification for an investigative detention.

Defendant relies on *Roth*, *supra*, 219 Cal.App.3d 211 and *People v. Garry* (2007) 156 Cal.App.4th 1100 (*Garry*). His reliance is misplaced.

In *Roth*, the defendant was walking through a deserted parking lot in the early morning when the police detained him, but there was no evidence the lot was a high crime area and the defendant did not attempt to flee, nor did he act evasively. (*Roth*, *supra*, 219 Cal.App.3d at pp. 213-215.) As we have shown, the present case is materially different.

In *Garry,* the trial court found, and the People argued on appeal, that the encounter between the defendant and the police was consensual; the People did not argue in the alternative that the defendant was detained based on reasonable suspicion. Finding the encounter was not consensual, the appellate court reversed without considering whether reasonable suspicion to justify a detention existed. (*Garry*, *supra*, 156 Cal.App.4th at pp. 1105, 1107, 1112.) Since consent is not an issue here, *Garry* is inapposite.

Defendant has shown no error in the trial court's ruling denying his motion to suppress.

## DISPOSITION

The judgment is affirmed.


                                                          MURRAY          , J.



We concur:



      BLEASE          , Acting P. J.



      BUTZ          , J.

7