Filed 5/26/15  P. v. Metzgar CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C077075 |
| Plaintiff and Respondent, | (Super. Ct. No. 14F00373) |
| v. | |
| GARY DEAN METZGAR, | |
| Defendant and Appellant. | |

Defendant Gary Dean Metzgar was charged with second degree burglary, possession of burglary tools, and possession of drug paraphernalia after a police officer found burglary tools and a methamphetamine pipe in his pockets during a patdown search.  Defendant unsuccessfully moved to suppress the evidence against him.

On appeal, defendant contends the police officer "did not have reasonable suspicion to detain [him] prior to conducting the patdown search."  We disagree and affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

On January 13, 2014, at approximately 12:09 a.m., Sacramento Police Officer Balwant Jagur was dispatched to a specific alley because a complainant had called advising he heard a "clicking sound" and was worried a burglary was taking place. The officer arrived on the scene alone, without sirens, approximately six minutes later.

Officer Jagur scanned the dark alley with his spotlight and saw only one individual, defendant, 20 to 30 feet from where the call indicated a burglary might have occurred. Defendant was dressed in all dark clothing walking out of the alley. The officer parked his car about 20 feet from defendant and put his spotlight on him. He got out of the car and walked at a normal pace toward defendant. He did not draw his weapon. He asked defendant what he was doing in the area, and defendant said his sister lived on Broadway and "he was out to get a breath of fresh air." Officer Jagur testified defendant seemed nervous.

Defendant had his hands in his pockets and Officer Jagur asked, "do you mind keeping your hands out of your pockets." Defendant initially took his hands out but immediately returned them to his pockets. The officer then "demanded [defendant] to take his hands out of his pocket[s]." When defendant removed his hands the second time, Officer Jagur noticed the tip of a screwdriver and diagonal cutter protruding from defendant's pocket. Because a screwdriver could be used as a puncture weapon, he conducted a patdown search for officer safety. The patdown search revealed a wire cutter, a flat tip screwdriver, a Phillips screwdriver, a nail file, and tweezers. Based on his training and experience, Officer Jagur believed the recovered items were burglary tools. He also felt a hard cylindrical object with a tube in defendant's pants, which he believed to possibly be a weapon. After further manipulation, the officer felt it was a methamphetamine pipe.

After placing defendant in a patrol car, Officer Jagur checked the alley for evidence of a burglary. He discovered a home in the alley appeared to have been

2

"vandalized and broken into." He found a portion of a fence that had been "pried off," a disassembled lock, doorknobs removed, and a broken window.

Defendant was charged with second degree burglary, possession of burglary tools, and possession of drug paraphernalia. He filed a motion to suppress, which was denied. At the hearing, the trial court found "the officer[']s actions [wer]e not violative of the Fourth Amendment and were reasonable and justified each step along the way." Specifically, it was "reasonable under the circumstances . . . [that when] some visual observation [was] made as to [the] partial tools showing, . . . the officer . . . conduct[ed] the pat-down search."

Subsequently, defendant pled no contest to the charge of second degree burglary and the trial court dismissed the other two charges. The court granted defendant probation with time served. This appeal followed.

DISCUSSION

On appeal, defendant contends the burglary tools and methamphetamine pipe should have been suppressed because Officer Jagur illegally detained him in violation of his Fourth Amendment rights. Defendant argues he was detained before Officer Jagur conducted the patdown search, absent reasonable suspicion he was involved in any criminal activity. Defendant further argues the complainant's tip did not provide reasonable suspicion of ongoing criminal activity or that defendant was engaged in that criminal activity, such that there was no legal basis for his detention when the officer conducted the patdown search that resulted in the discovery of the burglary tools and pipe. We disagree.

I

*Was There A Detention And When Did It Occur?*

"A detention occurs . . . 'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen' " (*In re Randy G.* (2001) 26 Cal.4th 556, 562) and that citizen would have reasonably believed he or she " 'was not

3

free to decline the officer['s] requests or otherwise terminate the encounter' " (*People v. Bouser* (1994) 26 Cal.App.4th 1280, 1283).

" 'In reviewing the denial of a motion to suppress evidence, we view the record in the light most favorable to the trial court's ruling and defer to its findings of historical fact, whether express or implied, if they are supported by substantial evidence. We then decide for ourselves what legal principles are relevant, independently apply them to the historical facts, and determine as a matter of law whether there has been an unreasonable search and/or seizure.' " (*People v. Gemmill* (2008) 162 Cal.App.4th 958, 963.)

To determine when a consensual encounter is converted into a detention, we must look objectively to the totality of the circumstances. (See *Wilson v. Superior Court* (1983) 34 Cal.3d 777, 790-791.) Defendant argues that no reasonable person in his position would have felt free to leave after the officer spotlighted him, walked briskly toward him, asked accusatory questions, and demanded he take his hands out of his pockets. Defendant relies on *People v. Roth* (1990) 219 Cal.App.3d 211 and *People v. Garry* (2007) 156 Cal.App.4th 1100. In both cases, the courts concluded the defendants had been detained, but both cases are distinguishable.

In *Roth*, two officers conducting a routine, late night security check of closed businesses saw the defendant walking in the parking lot. (*People v. Roth*, *supra*, 219 Cal.App.3d at p. 213.) The officer "shined his spotlight on Roth, stopped the patrol car, both deputies got out, and [the officer] stood behind the car door, commanding Roth to approach so the [officer] could speak to him." (*Id.* at p. 215.)

In *Garry*, an officer on patrol in a high-crime, high-drug area saw Garry standing next to a parked car on the corner. (*People v. Garry*, *supra*, 156 Cal.App.4th at pp. 1103-1104.) "[I]mmediately after spotlighting [Garry, the officer] all but ran directly at him . . . , asking [Garry] about his legal status as he did so." (*Id.* at p. 1112.) He "disregard[ed Garry]'s indication that he was merely standing outside his home" and "immediately questioned [him] about his probation and parole status." (*Id.* at p. 1111.)

4

Here, Officer Jagur was investigating a possible burglary in a dark alley. He scanned the alley with his spotlight, saw defendant, and shined his light on him. (See *People v. Perez* (1989) 211 Cal.App.3d 1492, 1496 ["While the use of high beams and spotlights might cause a reasonable person to feel himself the object of official scrutiny, such directed scrutiny does not amount to a detention"].) The officer then parked his car 20 feet away and got out. He did not have his siren on. When he approached defendant, he walked toward him at a normal pace and did not draw his weapon. He asked defendant what he was doing in the area. (See *In re Manuel G.* (1997) 16 Cal.4th 805, 821 ["[A] detention does not occur when a police officer merely approaches an individual . . . and asks a few questions"].)

These actions are distinguishable from an officer shining his spotlight on an individual then "all but [running] directly at him" while questioning him about his legal, probation, and parole status (*People v. Garry*, *supra*, 156 Cal.App.4th at p. 1112) or standing behind the protection of the door of his police vehicle and commanding him to approach (*People v. Roth*, *supra*, 219 Cal.App.3d at p. 215). We conclude defendant was not detained at the point when Officer Jagur had spotlighted him, walked toward him, and asked what he was doing in the area.

Next we must determine whether Officer Jagur's attempt to get defendant to remove his hands from his pockets transformed this encounter into a detention. We conclude the second attempt did. While "a request, an *asking,* reasonably [could not] be construed as a show of authority sufficient to transform the encounter into a detention," (*People v. Franklin* (1987) 192 Cal.App.3d 935, 942) a demand could. "It is not the nature of the question or request made by the [officer], but rather the manner or mode in which it is put to [defendant] that guides us in deciding whether compliance was voluntary or not" (*id*. at p. 941).

In *Franklin*, the officer was investigating a murder. (*People v. Franklin*, *supra*, 192 Cal.App.3d at p. 938.) He pulled his car behind Franklin, shined his spotlight on

5

him, and got out of the car. (*Ibid.*) Franklin approached the officer and appeared " 'real jittery, hyper.' " (*Ibid.*) The officer asked him to remove his hands from his pockets and he complied. (*Ibid.*) The Fifth District concluded the "nature of the officer's request . . . d[id] not convert the encounter into a detention" (*id.* at p. 941) because "the officer *asked*, not ordered, [Franklin] to remove his hands" (*id.* at p. 942). Here, Officer Jagur testified he asked defendant, "do you mind keeping your hands out of your pockets." This was a request, not an order, and we conclude neither " 'the content [n]or form of the question impart[ed] any compulsion to comply.' " (*In re J.G.* (2014) 228 Cal.App.4th 402, 412.)

After defendant returned his hand to his pockets, however, the officer testified that he "demanded [defendant] to take his hands out of his pocket." At this point, Officer Jagur was no longer asking, he was ordering defendant to comply. This demand changed the dynamic of the encounter enough that we conclude a reasonable person in defendant's position would not have felt free to disregard the officer's demand and terminate the encounter. Thus a detention occurred.

II

*Was The Detention Lawful?*

For a detention to be lawful, "the detaining officer [must be able to] point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231.) If lawfully detained, an officer may conduct a limited patdown search of the suspect's outer clothing for weapons if the officer has reasonable suspicion that he is dealing with an armed and dangerous subject and the search is limited to weapons. (*Terry v. Ohio* (1968) 392 U.S. 1, 30-31 [20 L.Ed.2d 889, 911].)

Because defendant was detained when he complied with Officer Jagur's demand to remove his hands from his pockets, we must determine whether this detention was justified. We conclude it was because "the circumstances known or apparent to [Officer

6

Jagur] . . . include[d] specific and articulable facts [which] cause[d] him to suspect that (1) some activity relating to crime has taken place or is occurring . . . and (2) [defendant] is involved in that activity." (*In re Tony C.* (1978) 21 Cal.3d 888, 893; *People v. Jordan* (2004) 121 Cal.App.4th 544, 558 ["Where police officers follow up . . . [a] tip and observe suspicious behavior, the totality of the circumstances may generate a reasonable suspicion that justifies a *Terry* stop and frisk"].) Moreover, Officer Jagur had more than an " 'inchoate and unparticularized suspicion or "hunch." ' " (*United States v. Sokolow* (1989) 490 U.S. 1, 7 [104 L.Ed.2d 1, 10].)

This court's ruling in *People v. Conway* (1994) 25 Cal.App.4th 385 is instructive here. In *Conway*, a caller reported a burglary in progress and an officer on duty nearby was dispatched to the location. (*Id*. at pp. 387-388.) While en route, the officer stopped a vehicle with two males in it. (*Id*. at p. 388.) "The stop occurred less than two minutes from the time [the officer] had received the burglary dispatch. The dispatch had not mentioned a car and had not given any description of the suspects. All [the officer] knew was that two suspects had been seen in a garage. He pulled over [the] defendant's vehicle because it was the only car on the street and was leaving the immediate area of a reported burglary." (*Ibid.*) This court concluded that "[u]nder the circumstances, it was objectively reasonable for the officer to suspect the car's occupants were involved in the burglary" because "the information [the officer] received about criminal activity was very current . . . [and the] car [was] leaving the area of the reported burglary. The time was 3 a.m., and the officer saw no one else in the area." (*Id*. at p. 390.)

Similar to *Conway*, the complainant's tip here indicated a possible burglary was in progress. Officer Jagur was dispatched to the alley based on that tip. Arriving on scene just six minutes after the dispatch call, the officer saw defendant -- the only person in the area. Defendant was dressed in all dark clothing and was within about 20 to 30 feet of where the call had indicated the burglary might have occurred. In addition, he seemed nervous and he wanted to keep his hands in his pockets even after the officer asked that

7

he not do that. This suspicious behavior was consistent with the complainant's tip and "considered in light of the totality of the circumstances, [it] provide[d] some objective manifestation that [defendant] may be involved in criminal activity." (*People v. Souza*, *supra*, 9 Cal.4th at p. 231.) For the foregoing reasons, we conclude defendant was detained lawfully.

As a result, Officer Jagur was justified in conducting a limited patdown search of defendant's outer clothes for weapons because defendant had been lawfully detained and the officer had a reasonable suspicion that defendant was armed and dangerous when he saw the tip of a screwdriver and diagonal wire cutters protruding from defendant's pocket. (*Terry v. Ohio*, *supra*, 392 U.S. at pp. 30-31 [20 L.Ed.2d at p. 911]; see also *People v. Myles* (1975) 50 Cal.App.3d 423, 430 ["It is reasonable for an officer to believe that a burglar may be armed with . . . tools such as . . . screwdrivers which could be used as weapons"].)

## DISPOSITION

The judgment is affirmed.


    ROBIE    , Acting P. J.


We concur:


    MAURO    , J.


    HOCH    , J.

8