Filed 1/22/15  P. v. Castro CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SERGIO LOPEZ CASTRO,<br><br>    Defendant and Appellant. | D065136<br><br><br><br>(Super. Ct. No. SCD250189) |

APPEAL from a judgment of the Superior Court of San Diego County, Joseph P. Brannigan and Eugenia Eyherabide, Judges.  Affirmed.

Joshua H. Schraer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Alastair J. Agcaoili, Deputy Attorneys General, for Plaintiff and Respondent.

Sergio Castro was detained by the police after being observed late at night in a commercial parking lot.  During the encounter he discarded a bag of cocaine.  He filed a

motion to suppress the discarded cocaine retrieved by the police based on a claim that he was unlawfully detained. The motion was denied, and he thereafter pled guilty to possession of cocaine. On appeal, he argues his motion to suppress should have been granted. He also argues a $100 attorney fee order must be stricken or the case remanded for a hearing on this matter. We reject these contentions and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In his motion to suppress (Pen. Code,[1] § 1538.5), defendant argued he was detained by the police with no reasonable suspicion that he was engaged in criminal activity. The motion was adjudicated at the preliminary hearing, where the People called one of the arresting police officers, Jill Pimienta, to testify.

### *Officer's Testimony*

Officer Pimienta testified that at about 12:30 a.m. on August 15, 2013, she and her partner, Officer Bell, were patrolling an area of the city where there had been problems with residential burglaries, car thefts, vehicle tampering, and narcotics activity. As they approached a parking lot of an auto repair business where there had been recent narcotics activity, Officer Bell (who was driving) told Officer Pimienta that a man (later identified as defendant) was "standing by the vehicles" in the parking lot. As the officers turned into the parking lot, they saw defendant walking "through the lot, kind of leaving where there were a few cars parked right there in the lot." Defendant then entered an alley that

---

[1] Subsequent unspecified statutory references are to the Penal Code.

2

was connected to the parking lot and walked towards an apartment complex. The officers drove towards defendant, who was now inside the gate of the apartment complex.

Officer Pimienta testified she thought defendant could have been tampering with the parked cars, and also because of the crime statistics in the area she wanted to confirm whether he lived at the apartment complex and that he was not involved in a burglary. When asked to describe the aspects of defendant's behavior that caused her to suspect he was involved in criminal activity, Officer Pimienta testified "walking back and forth in the alley, hanging out by the cars." When questioned further, she explained she did not see him "hanging out by the vehicles" for an "extended period of time," but Officer Bell saw him "standing by the vehicles" and then they saw him walking away from the cars. The officers did not know if he had "just paused" by the cars, or if he had been "hanging [out] for a while," and they did not see him looking inside or touching the vehicles.

When the patrol vehicle approached defendant at the apartment gate, Officer Pimienta got out of the car with the intent to detain him. She shined her flashlight on him and "asked" or "told" him to come and speak with them. Defendant did not comply with her request. Instead, he "stood there" and "shoved his hand into his shorts pocket." Based on her experience as an officer, this behavior signaled to Officer Pimienta that defendant might be concealing something in his pocket, such as a weapon.

Officer Pimienta "went and grabbed" defendant's hand and told him to bring his hand out slowly. Defendant complied, and Officer Pimienta handcuffed him for purposes of officer safety until they determined whether he had a weapon or was involved in

3

criminal activity. Defendant at first "slightly pulled away" while she was handcuffing him, but then "quickly complied."

As she handcuffed defendant, Officer Pimienta saw that he had a tissue in his hand and she felt him "flip his wrist" as if he was throwing something. About two feet from where he was handcuffed, Officer Pimienta found a small plastic bag containing cocaine.

*Courts' Rulings on Suppression Issue*

At the hearing on defendant's suppression motion, the prosecutor did not dispute that when the police contacted defendant, they engaged in a detention rather than a consensual encounter. The magistrate agreed that a detention had occurred because the officer shined a light on defendant and "order[ed] him to stop."

The parties disputed, however, whether the detention was supported by a reasonable suspicion of criminal activity. Defense counsel maintained there was no reasonable suspicion because defendant was merely seen standing next to a vehicle and then walking to an apartment complex; the police did not know how long he been there and did not see him looking inside the vehicles; he was in a residential area where people commonly park and walk to their homes and he could have been merely engaging in this activity; he did not flee from the police; and the fact the neighborhood was a high crime area could not alone justify the detention. Arguing the totality of circumstances showed a reasonable suspicion, the prosecutor stated defendant was in a high crime area; the parking lot was known for narcotics activity; defendant had no business being in the parking lot after midnight since the auto repair business was closed and this was not an

4

area where residents parked; and when the police arrived they observed defendant engaging in erratic movements.

As an alternative basis for its position the cocaine should not be suppressed, the prosecution also contended that regardless of the validity of the detention, the evidence was admissible because defendant voluntarily discarded the evidence in plain view. Defendant argued the evidence should not be admitted on an abandonment theory because the officer's conduct of grabbing his hand indicated a search was inevitable.

After hearing the officer's testimony and counsel's arguments, the magistrate concluded the detention was supported by a reasonable suspicion of criminal activity. The magistrate recognized the issue was a close one, but found there was a reasonable suspicion based on the high crime area and the "rather furtive conduct" of the defendant "standing by a car for some unknown reason." As to the prosecutor's alternative argument based on voluntary abandonment of the cocaine, the magistrate found that when defendant put his hand in his pocket, the officer was justified in grabbing defendant's hand for safety purposes, and defendant's subsequent act of discarding the cocaine was not the fruit of the detention.

After his unsuccessful suppression motion, defendant filed a motion to dismiss the information (§ 995) based on his claim that the magistrate erred in denying his suppression motion. The trial court denied the motion, finding the magistrate reasonably concluded there was a reasonable suspicion of criminal activity based on defendant's conduct of standing by a parked car at 12:30 a.m. in a high crime area and then moving toward the alley. The court emphasized that defendant was not seen just *walking through*

5

the parking lot, but rather was seen *standing by* a car before he moved away as the police approached. The trial court also found no error in the magistrate's rulings that when defendant put his hand in his pocket it was reasonable for the officer to grab his hand for safety purposes, and that even if the initial detention was illegal, the officers could properly seize the cocaine because defendant was not required to take the cocaine out of his pocket but voluntarily chose to do so to try to get rid of it.

## Guilty Plea and Sentence

Defendant was charged with possession of cocaine and three prior prison term enhancements. He pled guilty to cocaine possession and the prosecution dismissed the balance of the information. The court placed him on three years of formal probation under Proposition 36 drug treatment diversion (§ 1210) and ordered him to pay various fines and fees including a $100 fee to contribute to the cost of his legal representation.

## DISCUSSION

### I. *Denial of Suppression Motion*

#### A. *Standard of Review*

On appeal from the denial of a suppression motion, we defer to the magistrate's factual findings if supported by substantial evidence. (*People v. Hua* (2008) 158 Cal.App.4th 1027, 1033.) Under the substantial evidence standard, "we must draw every legitimate inference in favor of the magistrate's ruling and cannot substitute our judgment, on the credibility or weight of the evidence, for that of the magistrate." (*People v. Woods* (1993) 12 Cal.App.4th 1139, 1147-1148.) Once the historical facts have been established, we then apply the law to make an independent determination on

6

the constitutionality of the seizure.  (*People v. Brendlin* (2008) 45 Cal.4th 262, 268; *People v. Hua, supra*, at p. 1033.)

### B.  *Reasonable Suspicion for Detention*

### 1.  *Governing Law*

Although the police may approach an individual on the street and ask questions without triggering Fourth Amendment constitutional protections, the police may not detain the person without reasonable, objective grounds for doing so.  (*People v. Hughes* (2002) 27 Cal.4th 287, 328; *In re Manuel G.* (1997) 16 Cal.4th 805, 821.)  A detention occurs if the police conduct, which can include language and tone of voice, would have communicated to a reasonable person that the person was not free to decline the officer's request or otherwise terminate the encounter.  (*In re Manuel G., supra*, at p. 821.)

To justify a detention, the police must have a reasonable suspicion the person detained may be involved in criminal activity.  (*People v. Souza* (1994) 9 Cal.4th 224, 230-231.)  A reasonable suspicion requires a showing of specific and articulable facts that would cause a reasonable officer in a like position, drawing on the officer's training and experience, to believe criminal activity has occurred or is about to occur.  (*In re Tony C.* (1978) 21 Cal.3d 888, 893.)  Reasonable suspicion is something more than an inchoate and unparticularized suspicion or hunch, but something less than the fair probability required for probable cause.  (*People v. Bennett* (1998) 17 Cal.4th 373, 387.)

The "reasonable suspicion standard . . . is not a particularly demanding one, but is, instead, 'considerably less than proof of wrongdoing by a preponderance of the evidence.' "  (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 146.)  The courts consider

7

the totality of the circumstances to determine whether there was a particularized and objective basis for the officer's suspicion. (*People v. Souza, supra*, 9 Cal.4th at p. 230.) Even if the circumstances are consistent with innocent as well as criminal activity, the police may properly detain an individual to resolve the ambiguity; i.e., " 'to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.' " (*In re Tony C., supra*, 21 Cal.3d at p. 894; *Letner, supra*, at pp. 146-147.)

## 2. *Analysis*

On appeal, the Attorney General contends defendant was not detained until the officer grabbed his hand after defendant shoved it into his pocket. The magistrate concluded a detention occurred when the officer shined the light on defendant and ordered him to stop. Because the magistrate observed the officer's demeanor when describing how she first contacted defendant, we defer to the magistrate's finding that a detention occurred at this point. The magistrate could reasonably assess that the officer used a commanding tone of voice that communicated that defendant was not free to leave, and hence the police were not merely seeking to question defendant in a consensual encounter. (*People v. Roth* (1990) 219 Cal.App.3d 211, 215.)

We reject the Attorney General's contention that no detention occurred because defendant did not comply with the officer's direction to approach the police to talk. Although the high court has determined that a *fleeing* defendant is not seized for Fourth Amendment purposes (*California v. Hodari D*. (1991) 499 U.S. 621, 623-629), defendant

did not flee.  Rather, notwithstanding his failure to come over to the officers, defendant complied with the assertion of authority by remaining stationary.

As to the magistrate's finding that there was a reasonable suspicion to justify the detention, drawing all inferences in favor of the ruling, the record supports this finding. As noted by the trial court when denying the dismissal motion, the police did not merely see defendant walking through the parking lot, but rather saw him standing by the cars in the lot.  The lot was known to be a site of recent narcotics activity, and the neighborhood in general had been having problems with car thefts, vehicle tampering, and burglary. The magistrate could reasonably infer that because it was after midnight the business would be closed, and an innocent person would have no reason to be standing by cars parked in a lot of a closed auto repair business.  (Contrast *People v. Roth, supra*, 219 Cal.App.3d at pp. 213, 215 [no reasonable suspicion for detention of defendant merely *walking through* parking lot of closed business in early morning hours].)  Also, the magistrate could consider that when the officers approached in their vehicle, defendant started walking away through an alley and into an apartment complex, which could suggest he did not want the officers to check on what he was doing in the closed business's parking lot.

In short, the facts described by the officer did not merely reflect a person standing by cars and then walking away in a residential neighborhood, but rather reflected a person standing in a commercial lot that would not normally be visited by people in the early morning hours and that was identified as a location of recent narcotics activity. These circumstances are sufficient to invoke a reasonable suspicion that defendant had no

9

legitimate purpose for standing in the parking lot and he was engaging in criminal activity, thus allowing the police to lawfully detain him to ascertain whether their suspicions were accurate.

To support his challenge to the detention, defendant maintains the auto repair shop's parking lot also "provided parking for the residents of the apartment complex and their visitors." He fails to provide a record citation supporting this claim, and we found no evidence of this in our review of the record. Drawing all reasonable inferences in favor of the court's ruling, we assume the auto repair shop's parking lot was solely for the use of the patrons of the auto repair shop.

Defendant also cites cases in which the courts found no reasonable suspicion under circumstances where the defendants were detained at night upon being seen in commercial parking lots known for narcotics activity. (*People v. Aldridge* (1984) 35 Cal.3d 473, 476-480; *People v. Wilkins* (1986) 186 Cal.App.3d 804, 807, 811.) The California Supreme Court has recognized that *Aldridge*'s analysis is no longer controlling because it is premised on the state Constitution and predates the enactment of the "Truth-in-Evidence" constitutional provision that limits application of the exclusionary rule to federal constitutional violations. (*People v. Souza, supra*, 9 Cal.4th at pp. 232-233, 240-242.) In any event, in both *Aldridge* and *Wilkins*, the defendants were in the parking lots during hours that *the businesses would typically be open*. (*Aldridge, supra*, at pp. 476, 478 [liquor store at 10:15 p.m.]; *Wilkins, supra*, at pp. 807, 811 [convenience store at 10:18 p.m.].) In contrast here, the magistrate could reasonably deduce that because an

auto repair shop is typically *not* open after midnight, defendant's presence at this location was suspicious.

Because there was a reasonable suspicion to detain defendant, we need not discuss whether the cocaine was otherwise admissible under attenuation principles.

## II. *Attorney Fees Order*

Defendant argues the $100 attorney fees order must be stricken, or the case remanded for a hearing, because the court (1) did not orally pronounce that the amount of the fees was $100, and (2) did not hold a noticed hearing on his ability to pay the fees.

## A. *Background*

After the trial court denied defendant's motion to dismiss the information, the court held a combined change of plea hearing and sentencing hearing. The record reflects that before this hearing, the parties and the court participated in an in-chambers discussion regarding the case. Thereafter, the hearing was convened, during which the court accepted defendant's guilty plea and then placed him on Proposition 36 drug treatment probation under section 1210. During the hearing the court referred to the various forms signed by defendant, including the guilty plea form and a form entitled "PC1210 Judgment Minutes Addendum" (the Addendum form). The court asked defendant if he had ample time to review the change of plea forms with his attorney and if he understood them, and defendant answered yes. At the sentencing portion of the hearing, the court asked defendant if his attorney had reviewed with him all the terms and conditions set forth in the Addendum form that the court was about to impose, and defendant answered yes. The court then stated that it "will impose all of these boxes

11

from the white PC1210 form that we just discussed" and asked defendant "Sir, do you accept probation on those terms and conditions?" Defendant answered yes.

The Addendum form lists numerous matters that can be imposed in conjunction with the probation grant, with boxes that can be marked to indicate the particular item is imposed in the case. One of the items on the Addendum form states: "Pay attorney Fee and Probation costs as determined by the Court." The bottom of the form was signed by defendant, with an attestation stating: "I have read, reviewed and understand the above-initialed information." The minute order specifies that the amount of attorney fees owed is $100.

## B. *Analysis*

Section 987.8, subdivision (b) provides that "the court may, after notice and a hearing, make a determination of the present ability of the defendant to pay all or a portion of the cost" of the legal assistance provided to the defendant. At the hearing the defendant has the right to be heard, to present evidence, and to a written statement of findings. (§ 987.8, subd. (e).) When evaluating ability to pay, the court may consider such factors as defendant's present financial position, his reasonably discernable future financial position or ability to obtain employment in the next six months, and any other relevant factors; however, absent a finding of unusual circumstances a defendant sentenced to prison should be determined not to have a future financial ability to pay. (§ 987.8, subd. (g)(2).) If the court determines the defendant has the present ability to pay all or part of the cost of the provided legal assistance, the court "shall set the amount to be reimbursed and order the defendant to pay the sum to the county in the manner in

12

which the court believes reasonable and compatible with the defendant's financial ability."  (§ 987.8, subd. (e).)

To the extent defendant asserts he was not provided a noticed hearing, the contention fails.  When construing the attorney fee recoupment statute as well as a similar statute concerning probation cost recoupment, in *People v. Phillips* (1994) 25 Cal.App.4th 62 the court held that although the statutes afforded the defendant "various procedural rights at the hearing, this cannot be read as excluding a more informal procedure with a defendant's acquiescence."  (*Id*. at pp. 69-76; see *People v. Saunders* (1993) 5 Cal.4th 580, 589-590 [party has duty to request compliance with procedural rights before trial court].)  *Phillips* also concluded that a reference in the probation report to a possible attorney fee order, followed by defense counsel's failure to raise any claim of lack of notice at the hearing, reflected that the defendant was provided adequate notice. (*Phillips, supra*, 25 Cal.App.4th at pp. 66, 72-75.)  Here, the Addendum form expressly states payment of attorney fees is required as determined by the court; defense counsel reviewed the Addendum form with defendant before the hearing; and defendant was queried about the Addendum form at the hearing and stated he accepted its terms with no mention of lack of notice or request for further adjudication.  These circumstances reflect defendant was provided adequate notice and a sufficient hearing on the matter.

Nevertheless, defendant asserts the $100 fee should be stricken because the court's oral decision controls over the written minute order, and the court did not orally specify the $100 amount at the hearing.  The contention is unavailing because although the court's oral pronouncements control when there are discrepancies between the oral

13

statements and a minute order (*People v. Mesa* (1975) 14 Cal.3d 466, 471), there are no such discrepancies here. At the hearing the court expressly imposed all the terms listed on the Addendum form, which included the attorney fee payment requirement. This is not a case where the court failed to order a fee listed in the minute order, or ordered an amount that differed from the amount in the minute order. The minute order simply specifies the amount of the fees that were orally ordered by the court when it imposed the terms in the Addendum form without identifying an amount. On this record, there is no suggestion the minute order does not comport with the amount of fees the court intended to impose.

If the fee is not stricken, defendant posits the case should be remanded for a hearing. Under the circumstances of this case we conclude this is not necessary. Although the $100 amount of the fee was not explicitly referenced until the issuance of the court's minute order, the record shows the disposition of the case was discussed in chambers, in consultations between defendant and his counsel, and at the sentencing hearing. At the sentencing hearing defense counsel did not request that the court specify the amount of the attorney fees, and via the minute order the court imposed the relatively small amount of $100. Based on the small amount of the fee and the showing that defendant had a full opportunity to discuss and/or ask questions about the fee, the court's failure to reference the amount at the sentencing hearing does not alone reflect a reversible deficiency requiring a new hearing. (Contrast *People v. Prescott* (2013) 213 Cal.App.4th 1473, 1476 [remand warranted when defendant "did not have either notice of a hearing or a hearing itself"].)

14

As to defendant's ability to pay, although defendant had a right to a written statement of findings, there is nothing in the statutory scheme as it pertains to defendant that compelled the court to make express oral or written findings absent a request by defendant. (*People v. Lopez* (2005) 129 Cal.App.4th 1508, 1537 [express finding on ability to pay attorney fees not required *unless* defendant is sentenced to prison so as to trigger statutory presumption of inability to pay absent a finding of unusual circumstances]; *People v. Phillips, supra*, 25 Cal.App.4th at pp. 71, 76 [order may be based on implied finding of ability to pay]; see *People v. Aguilar* (Jan. 12, 2015, S213571) __ Cal.4th __ [defendant forfeits appellate challenge to ability to pay absent objection before trial court]; *People v. Trujillo* (Jan. 12, 2015, S213687) __ Cal.4th __ [same].) Also, we presume the court complied with its duty to consider defendant's ability to pay when it imposed the $100 fee. (*People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1836 [presumption that official duty is performed].)

Thus, the order here is sustainable if there is substantial evidence supporting an implied finding of ability to pay. (*People v. Phillips, supra*, 25 Cal.App.4th at p. 71; *People v. Hennessey, supra*, 37 Cal.App.4th at pp. 1836-1837.) Drawing all reasonable inferences in favor of the ruling (*Phillips, supra*, at pp. 71-72), the record supports this finding. Defendant is not in prison; thus, the statutory presumption of inability to pay attorney fees for imprisoned offenders is inapplicable here. At the time of sentencing, defendant was 34 years old; one of his probation conditions states he should seek and maintain full-time employment; and there has been no contention this condition is inappropriate for defendant. Under these circumstances, showing defendant's relatively

15

young age, a relatively small fee amount, and the absence of an objection to the imposed employment requirement, the trial court could reasonably assess defendant has the ability to pay the fee.

For the same reasons, there is no reasonable probability a remand for further hearing on the matter would result in a different outcome.  (See *People v. Valtakis* (2003) 105 Cal.App.4th 1066, 1076.)  We reject defendant's requests that we strike the $100 attorney fee order or remand the case for a further hearing on the matter.

DISPOSITION

The judgment is affirmed.

HALLER, J.

WE CONCUR:

McCONNELL, P. J.

McDONALD, J.

16